254 A.2d 747.

MERRILL HAWKINS *vs.* NORMAN F. SMITH *et al.*

JUNE 13, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This civil action was brought by the plaintiff against the defendant Norman F. Smith. He demanded delivery of 28 shares of stock of Tiverton Gas Company, which Mr. Smith held in escrow under an agreement, dated May 27, 1950, between the plaintiff and Robert D. Stuart,

Jr. The defendant Smith moved to join as parties defendant Robert D. Stuart, Jr., The Martin Foundation, Inc. and The Newport Gas Light Company and he requested the court to order the plaintiff and the third party defendants to interplead their respective claims. The corporate defendants, assignees of the interest of Mr. Stuart in the May 27, 1950 agreement, filed an answer denying the plaintiff's right to possession of the 28 shares, and by counterclaim demanded a declaratory judgment in their favor. They subsequently filed a supplementary counterclaim alleging a default of the escrow agreement by the plaintiff, and demanding immediate delivery of the 28 shares to Mr. Stuart. Mr. Stuart also filed an answer alleging the assignment of his interest and asking that the action be dismissed as to him.

The case was heard before a justice of the superior court sitting without a jury. The evidence consisted of the testimony of the plaintiff, his wife, and Mr. Stuart, a photostatic copy of the stock certificate of 28 shares, and a stipulation of facts signed by the plaintiff and the corporate defendants. During the hearing defendant Stuart was dismissed as a party defendant upon his own motion, and an order to that effect was subsequently entered. After the hearing the trial justice rendered a decision in favor of the plaintiff and a judgment was entered ordering defendant Smith to deliver the 28 shares to plaintiff. From that judgment, the corporate defendants filed the instant appeal to this court.

The record discloses the following pertinent facts. Sometime prior to 1950 plaintiff acquired 498 shares in Tiverton Gas Company, this figure being all of the issued and outstanding capital stock of the company. On May 27, 1950, plaintiff sold 225 of these shares to defendant Stuart for the sum of $22,500. Incident to the sale, plaintiff entered into a written agreement with defendants Smith and Stu-

art, by the terms of which plaintiff deposited 28 shares of Tiverton Gas Company stock in escrow with defendant Smith. These shares represented the controlling interest in the company. Following the agreement plaintiff owned 225 shares; his wife, Florence, owned 20; Stuart owned 225; and 28 were held by defendant Smith in escrow. The agreement was drawn by defendant Smith, an attorney, at the request of plaintiff and defendant Stuart. After referring to the sale of the 225 shares to Stuart and to the deposit in escrow of 28 shares with Smith, the agreement provided that the voting and dividend rights of the 28 shares were to remain in plaintiff until they were delivered by Smith to Stuart. Additionally, the agreement provided that the delivery of the 28 shares in escrow was made upon the following terms and conditions:

"1. In the event that Merrill Hawkins and Robert D. Stuart, Jr. desire to sell their holdings of the Tiverton Gas Company common stock, Norman F. Smith is to return the twenty-eight (28) shares to Merrill Hawkins for such purpose of sale.

"2. If the aforementioned Robert D. Stuart, Jr., does not realize a minimum of thirteen hundred fifty (1350.00) dollars annually, in each successive twelve month period following May 1, 1950, from the Tiverton Gas Company, whether in the form of dividend, salary or other remuneration, the said Norman F. Smith is to deliver the twenty-eight (28) shares of common stock of the Tiverton Gas Company, as soon as practicable after such failure, to Robert D. Stuart, Jr., if living, or if deceased, to his heirs, executors, administrators or assigns as the case may be.

"It is not intended by the provisions of this paragraph 2 that Robert D. Stuart, Jr., shall be under any obligation to become a salaried employee of the Tiverton Gas Company.

"3. Upon the death of Merrill Hawkins, the said Norman F. Smith is to deliver as soon as possible thereafter, the twenty-eight (28) shares of the common stock of the Tiverton Gas Company to Robert D. Stu-

art, Jr., if living, or if deceased, to his heirs, executors, administrators or assigns as the case may be.

"It is the intention of the parties that in the event that Norman F. Smith delivers to Robert D. Stuart, Jr., or his heirs, executors, administrators or assigns, the said securities in accordance with the above terms, then the title is to pass absolutely to Robert D. Stuart, Jr., or his heirs, executors, administrators or assigns."

When asked why he decided to sell the 225 shares to Stuart, plaintiff replied that Stuart and he had been friends for many years; that he needed some money; and that he thought Stuart, who had worked with the Blackstone Valley Gas and Electric Company, would be an asset to the company. He also testified that Stuart had two sons, and that one of Stuart's interests was that as time went on they would be put to work in the company; that the escrow idea was Mr. Stuart's; and that he told Stuart he would pay him a 6 per cent return on his money, which amounted to $1,350 annually, a return which Stuart could not otherwise make on his money. Mr. Stuart stated in his testimony that one of his motives in buying the stock was to make some possible future provisions for his sons. Both plaintiff and Stuart testified that they contemplated that they would sell out together and that they did not anticipate the consequences of a unilateral sale by either party. The plaintiff also testified that he managed and operated the company at all times as majority stockholder and as president and treasurer, and that Stuart, prior to sale of his interest, was a great help to him in running the company. On or about October 25, 1962, Mr. Stuart sold his 225 shares to The Martin Foundation, Inc., and by instrument dated October 25, 1962, assigned to that foundation all his assignable interest under the May 27, 1950 agreement, all for a consideration of $112,500. The plaintiff was aware of that sale and assignment and made no objection to it. The notice of assignment was accepted by Mr. Smith. By agreement dated October 12, 1966, the foundation sold the 225 shares to

The Newport Gas Light Company, and assigned to the latter all its interest under the May 27, 1950 agreement, all for a purchase price of $136,387.50. Pursuant to paragraph 2 of the May 27, 1950 agreement, the Tiverton Gas Company made monthly payments of $112.50 to Stuart. After Stuart's sale to the foundation, the Tiverton Gas Company, upon the advice of Stuart and Smith to plaintiff, made the monthly payments to the foundation until October 12, 1966. After the foundation sold the shares to The Newport Gas Light Company, all the monthly payments were made to the latter. The gas light company's counsel informed the trial justice that according to its records the January 1968 payment was not received.

The plaintiff testified that he desired to sell his holdings in the Tiverton Gas Company and retire; that he could not sell the company because he did not have the escrow shares; and that in the circumstances he had decided to sell his holdings to his stepson. By letter dated May 4, 1967, plaintiff made demand upon Mr. Smith for transfer to him of the 28 shares held in escrow. The demand was refused and on June 17, 1967 plaintiff commenced the instant action.

In his decision the trial justice construed the May 27, 1950 agreement as a "very personal" agreement between plaintiff and Stuart, as individuals. He found that the primary purpose of the agreement was to protect the interests of Stuart and his family so long as Stuart was a stockholder and that the agreement had no more meaning after Stuart withdrew as a stockholder. He stated that he was aware of the fact that the word "assigns" was used in the agreement, but he did not believe the use of the word had any particular significance in the circumstances. Accordingly, he held that the May 27, 1950 agreement was terminated and cancelled on October 25, 1962, when Stuart sold his stock to the Martin Foundation, because the purpose of the agreement had been accomplished; that defendant

Smith had no further duties under the agreement after October 25, 1962, and he was directed to deliver to plaintiff the certificate evidencing plaintiff's ownership of the 28 shares; that upon delivery of the certificate to plaintiff defendant Smith would be exonerated and discharged from all liabilities; and that plaintiff was not entitled to any refunds of the annual sums of $1,350 which had been paid to the corporate defendants since October 25, 1962. A judgment incorporating the findings and orders of the trial justice was thereafter entered.

## I

The appellants' first contention is that the agreement was complete, clear and unambiguous on its face and could not be modified by parol evidence. They argue that in the absence of fraud or mistake, parol or extrinsic evidence is not admissible to vary, alter or contradict a written agreement complete and unambiguous on its face; that a complete and unambiguous written agreement merges and integrates all pertinent oral negotiations made at the time of execution or prior thereto; and that the intention of the parties to a contract free from ambiguity must be gathered from the language of the instrument itself. We agree with the rules as stated by the appellants, but in our judgment they do not apply to the facts in the case at bar.

We do not agree with appellants' statement that an examination of the agreement indicates no ambiguity or incompleteness on its face. Indeed, the opposite is true; the agreement is incomplete on its face. It fails to provide for the consequences of the very thing that happened in the case at bar. Additionally the language of paragraph one is ambiguous on its face. What did the parties mean by providing in that paragraph that "In the event that Merrill Hawkins and Robert D. Stuart, Jr. desire to sell their holdings of the Tiverton Gas Company common stock, Norman

F. Smith is to return the twenty-eight (28) shares to Merrill Hawkins for such purpose of sale"?

Paragraph one on its face is susceptible of at least three separate interpretations. The parties may have been thinking of a joint sale to a single purchaser, a contemporaneous sale to separate vendees, or a sale by plaintiff to one party and by Stuart to a different party at different times. The use of the word "assigns" in the second and third paragraphs does not help in answering these questions. It was because of the incompleteness and ambiguity of the agreement that the trial justice allowed plaintiff, over objection, to testify concerning conversations he had with the other party to the agreement, prior to its execution, as to their intentions. The challenged testimony indicates that the parties to the agreement both contemplated at the time the agreement was signed that they would get out of the company together. It also appears from the testimony of plaintiff and Stuart that, at the time they executed the agreement, they never contemplated, and did not intend to cover, by the language of the agreement, a unilateral sale by either party. Mr. Stuart testified that a joint sale was contemplated.

The appellants' challenge under point I, as we understand it, is to the evidentiary rulings of the trial justice allowing plaintiff's testimony about certain conversations between the parties to the agreement prior to the execution thereof. The plaintiff's testimony, as we have previously stated, is merely that in their conversations prior to the execution of the escrow agreement he never discussed the consequences of a unilateral sale with either Mr. Smith or Mr. Stuart. We see no connection between the challenged rulings and appellants' statement that the agreement provides only three ways by which the escrow arrangement shall be terminated and that the agreement contains no express provision for termination upon a unilateral sale.

The evidence in question was admitted to explain an incomplete and ambiguous agreement. Parol or extrinsic evidence is admissible to explain an agreement which is unclear, *Salvas* v. *Jussaume,* 50 R. I. 75, 145 A. 97, or inexplicit, *Davis* v. *Manchester,* 17 R. I. 577, 23 A. 1016, or ambiguous, *Waterman* v. *Waterman,* 93 R. I. 344, 175 A.2d 291; *Continental Ill. Co.* v. *Longley Motor Sales Co.,* 43 R. I. 552, 113 A. 869. See also 3 Corbin, *Contracts,* §542 (1960). Nor does the questioned evidence in any way vary, alter or contradict the agreement, and it therefore does not violate the parol evidence rule. See *Supreme Woodworking Co.* v. *Zuckerberg,* 82 R. I. 247, 107 A.2d 287.

We find no error in the challenged rulings.

## II

The appellants next contend that even if the agreement was incomplete or ambiguous on its face, the trial justice erred in its construction. They argue that his finding as to intent is contrary to the express testimony of both parties to the agreement. In support of this argument they point out that neither of the parties testified that a unilateral sale would void the agreement; that, in fact, they testified that they did not consider it; and that by providing three specific ways that the escrow of stock could be terminated, the parties excluded any other method of termination. They also argue that the trial justice erred in disregarding the word "assigns" in the agreement; that the effect of the trial justice's decision was to make the agreement a nullity; that the trial justice failed to consider the construction given to the agreement by the parties by their actions; and, finally, that the trial justice exceeded his power in "rewriting" the agreement.

· We agree that neither of the parties testified that a unilateral sale would void the agreement and that their testimony was to the effect that they had not contemplated a unilateral sale. The trial justice did not find to the con-

trary. As we have previously stated, the trial justice construed the agreement as a personal one between the parties, the primary purpose of which was to protect the interests of Mr. Stuart and his family so long as Stuart was a stockholder. He held that the agreement had no more meaning after Stuart sold to The Martin Foundation because the purpose of the agreement had been accomplished. While it is true that the agreement does not provide for termination in the event of a unilateral sale, we believe that on the basis of the language of the agreement and the surrounding circumstances the trial justice's construction of the agreement was reasonable. Once the primary purpose of the agreement had been accomplished, the agreement terminated. Since it is admitted that the parties did not contemplate a unilateral sale, it does not follow that by providing three specific ways in the agreement by which the agreement could be terminated, the parties excluded termination upon the accomplishment of the primary purpose of the agreement.

The appellants refer to the use of the word "assigns" in the agreement and argue that the trial justice erred in disregarding that word as unimportant. We do not believe that the use of the word "assigns" in paragraphs two and three of the agreement has any significance in solving the issues raised in this appeal. Nor do we believe that there is any merit to appellants' contention that the trial justice failed to consider the construction given to the agreement by the parties by their actions. He knew that prior to selling the stock to The Martin Foundation, Mr. Stuart had discussed the matter with plaintiff. He also knew that after the sale plaintiff caused the payments specified in paragraph two of the agreement to be made to The Martin Foundation, and that when the Foundation sold the shares to The Newport Gas Light Company, the payments were sent to the latter. However, he held that plaintiff had caused

these payments to be made by error. In the circumstances, it is reasonable to assume that he did not consider those payments to be controlling with respect to the intent of the parties. We do not believe that he overlooked the rule in *Coe* v. *Zwetchkenbaum*, 89 R. I. 358, 364, 153 A.2d 517, 520. In our judgment there is no merit to any of the contentions made by appellants under point II, and therefore they do not require further discussion.

## III

We come next to appellants' contention that plaintiff is estopped to challenge the fact that the agreement authorizes a unilateral sale. They point out that the evidence shows that nearly five years have elapsed betwen the sale to The Martin Foundation and the commencement of this action; that the evidence shows plaintiff made no attempt to secure possession of the 28 shares until May 4, 1967; and that plaintiff caused the Tiverton Gas Company to continue to make monthly payments of $112.50 to The Martin Foundation and to The Newport Gas Light Company. They argue that plaintiff's silence and inaction induced Stuart and the corporate defendants to believe that the agreement authorized assignment of the interest in the 28 shares. They argue further that continuance of the payments supported the belief that the agreement continued in effect. In the circumstances, they contend that the failure of the trial justice to consider the question of estoppel was error.

There is nothing in the record showing that appellants raised the question of equitable estoppel in the trial court. Indeed this is apparent from statements of appellants' counsel during oral argument before this court. On this record this issue is not properly before us. The only issues entitled to be reviewed in this court are those properly raised in the court below. *Spouting Rock Beach Association* v. *Garcia*, 104 R. I. 451, 244 A.2d 871. As the court said in that case at page 464, 244 A.2d 878: "An issue which was

not before the trial justice is not properly before us on appeal and will not be considered."

## IV

We have examined all of appellants' arguments in support of their contention that the trial justice erred in drawing an adverse inference against defendants. The appellants refer to the trial justice's statements in his decision that the failure of any of the parties to present Mr. Smith as a witness operated as a "handicap" to the court, and that from the fact that representatives of the corporate defendants were not called to testify, he was drawing an inference that their testimony, if it were presented, would be adverse to them.

There may be merit to appellants' instant contention and, for that reason, we shall assume for the purposes of this discussion that the trial justice was in error. The question still remains whether the error was such that it affected the trial justice's decision. If it did, it was prejudicial and would entitle appellants to a reversal. On the other hand, if it did not affect the decision, it was not prejudicial. We are satisfied from a reading of the trial justice's decision that the adverse inferences in question did not influence the trial justice's ultimate decision and that the decision can stand without the benefit of those inferences. It is clear from a reading of his decision that he relied on the testimony of the parties and on his construction of the agreement in deciding as he did. We cannot, therefore, hold that the error was prejudicial.

The appeal of The Martin Foundation, Inc. and The Newport Gas Light Company is denied and dismissed. The judgment appealed from is affirmed.

*Tillinghast, Collins & Tanner, Peter J. McGinn, Louise Durfee,* for plaintiff.

*Moore, Virgadamo, Boyle & Lynch, Salvatore L. Virgadamo,* for the Newport Gas Light Company and The Martin Foundation, Inc., for defendants.