**Hilton H. BADER**

v.

**ALPINE SKI SHIP, INC., et al.**

**No. 84–50–Appeal.**

Supreme Court of Rhode Island.

March 13, 1986.

Gerald C. DeMaria, Higgins Cavanagh & Cooney, Providence, for plaintiff.

Peter J. McGinn, Normand G. Benoit, Tillinghast Collins & Graham, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action to recover damages for breach of an employment contract executed between the plaintiff Hilton H. Bader and the defendant J & T, Inc.,[1] a Rhode Island corporation, on October 15, 1961. The plaintiff brought an action on July 18, 1979, in Superior Court seeking past damages and an accounting in order to determine future earnings to which he was allegedly entitled under the original contract. The case was tried before a Superior Court justice sitting with a jury. The jury returned a verdict for the plaintiff in the amount of $354,985. The defendants filed

---

1. In 1964, Alpine Ski Shop, Inc., was formed as a Rhode Island corporation. Alpine assumed the rights and responsibilities of J & T, Inc.

a motion for a new trial which was conditionally granted, and a new trial was ordered unless the plaintiff agreed to a remittitur, reducing the award to $219,491. The plaintiff did not agree to the remittitur, and both parties subsequently filed appeals to this court.

The record reveals that sometime in 1961, Mr. Harold Jacober, principal officer of J & T, Inc., which operated a store known as the Gob Shop in Providence, Rhode Island, decided to expand the store's inventory to include skis and ski-related merchandise. At that time, the Gob Shop was involved primarily in the sale of surplus military materials and work clothing. To that end Mr. Jacober, on behalf of J & T, Inc., and plaintiff entered into an employment contract on October 15, 1961. Pursuant to the terms of the contract, plaintiff was to be paid an annual salary of $6,500. In addition, he was to receive an annual bonus payment of 50 percent of the net profits in excess of $6,500 of the ski department. Under the terms of the contract, this arrangement would "continue in existence during the profitable operation of the department known as the 'Ski Shop.'" The contract also specified that it would remain in effect as long as the ski department remained in operation, wherever located, either by J & T, Inc., or any other corporation of which J & T, Inc., was the owner.

From its inception in 1962 the ski shop was very profitable. The plaintiff managed the ski shop which entailed purchasing all the inventory, and interviewing, hiring, and training the staff. As a consequence of its success, the ski department was made a separate corporation under the name of Alpine Ski Shop, Inc., in 1964. Mr. Jacober was an officer and a director and held 50 percent of the stock; Mrs. Jacober held the remaining 50 percent. As the business expanded, the Alpine Ski Shop, Inc., of East Greenwich was formed. Mr. Jacober owned 50 percent of the stock and

was an officer and a director. In 1969 Alpine Ski Shop of Attleboro, a Massachusetts corporation, was formed. Mr. Jacober owned 50 percent of the stock and was also an officer and a director of that corporation.

Pursuant to the contract, plaintiff had an option to purchase up to 40 percent of the ski department at the original cost. This option had to be exercised within five years of the date the contract was formed. The testimony indicates that sometime in 1965 and 1966 negotiations took place between the parties regarding the option clause. As a result of these negotiations, sometime in 1966 plaintiff began to receive a percentage of the net sales instead of 50 percent of the net profits as provided for in the agreement. The plaintiff testified that he was not aware of this change in the method of computing his bonus. This arrangement continued until July 1, 1972. From July 1, 1972 until March of 1979, plaintiff received a salary of $15,000 per year and was removed as the manager and made a salesman. In March of 1979, plaintiff was discharged after a series of incidents involving his behavior with other employees. At trial plaintiff testified that he did not complain about his compensation between 1972 and 1979 because he relied upon the original contract and Mr. Jacober's apparent good faith.

During the course of the trial, the evidence established that the three Alpine stores were separate corporations with different shareholders and capitalization. However, the stores made common purchases of inventory and advertisements. Adjustments were made at the end of each year so that each corporation paid its percentage of the inventory and advertisement costs. The stores also shared employees, but the common employees received compensation from the particular corporation that they worked for at the time.

The record also reveals that Mr. Jacober was part owner in two other Rhode Island

businesses, Heirling of Switzerland, Ltd., and Heirling Boot Sales. The plaintiff sought to introduce evidence concerning the profits earned by these companies claiming that he was entitled to a percentage of profits under the contract; however the trial justice determined that these companies were not subject to the original contract.

On appeal the parties raise the following issues: (1) whether the contract was terminable at will by either party; (2) whether the statute of limitations barred plaintiff's cause of action; (3) whether the trial justice erred in not allowing plaintiff to introduce evidence of defendant's investment in the two Heirling businesses and the net profits derived therefrom; (4) whether the trial justice was correct in allowing plaintiff to recover a percentage of profits from the Alpine Ski Shops of Attleboro and East Greenwich; (5) whether the trial justice was correct in granting a remittitur; and (6) whether the trial justice was correct in limiting the prejudgment interest.

### I

The plaintiff contends that the contract between the parties is neither for an indefinite period nor terminable at will. The plaintiff relies on the terms of the contract wherein it states: "[w]hen and if the ski shop becomes unprofitable, either party may terminate the employment for any reason * * * ." The plaintiff contends that only if the ski shop becomes unprofitable can the contract be terminated.

Relying upon the language of the contract and the testimony of the witnesses, the trial justice ruled that the contract in the present case was for an indefinite period and therefore was terminable at will. He further ruled that the contract was terminated in March 1979 when plaintiff was discharged.

In *Powless v. Pawtucket Screw Co.*, 116 R.I. 158, 162, 352 A.2d 643, 646 (1976), this court, in deciding whether an oral employment contract was terminable at will, stated that where the duration of a contract is uncertain, it is for an indefinite term and therefore terminable by either party at will.

In reviewing the specific language of the contract at issue and the testimony relative thereto, we conclude that since the contract was for an indefinite period and there was no intent on the part of the parties to have an eternal contract, it was therefore terminable at will by either party.

Accordingly, we hold that the trial justice's decision was correct and find that there was sufficient evidence to support his determination.

### II

The defendants allege that the statute of limitations bars plaintiff's suit because the last bonus payment that plaintiff received was for the fiscal year 1970–1971 which was tendered to him in September 1972. The defendants state that no bonus was paid to plaintiff after that date. However, the record reveals that plaintiff received bonus payments in August or September after the fiscal year had ended. Because of this, plaintiff could have reasonably anticipated the receipt of a bonus payment in 1973. The testimony further indicates that plaintiff consistently relied upon a statement made by defendant Jacober sometime in 1965–1966 that plaintiff would never have to worry about a job.

The trial justice determined that the validity of the statute-of-limitations defense raised by defendant was a question of fact for the jury. In his opinion, the statute-of-limitations issue was dependent upon whether the contract was breached, and if so, when. Where the evidence raises questions of fact under the statute of limitations, such questions should be submitted to the jury. *See Personal Finance Co. v. Franco*, 72 R.I. 85, 90, 48 A.2d 355, 358

(1946); *Stedman v. Hinman,* 67 R.I. 123, 128, 21 A.2d 10, 13 (1941).

In *Stedman* the plaintiff sued the defendant administrator for payment on a promissory note that was executed by the decedent. In dispute was the date of the last interest payment made by the decedent which would determine whether the plaintiff had filed suit within the six-year statute of limitations. The court stated:

> "It was for the jury to say in the first instance whether or not they believed (the plaintiff). If they believed him, the defendant's plea of the statute of limitations would have been ineffective * * * if they did not believe him, such plea would have constituted a valid defense to plaintiff's claim."

Likewise, in the case at bar, if the jury chose to believe plaintiff that the contract was breached in September 1973, then the statute-of-limitations defense would fail because plaintiff filed suit in July 1979, well within the allotted time. However, if the jury believed defendants that the contract was breached, if at all, in 1972, then the defense of the statute of limitations would succeed in barring plaintiff's action.

■ After our review of the record, we find that plaintiff's cause of action accrued in September 1973, the time when he could have reasonably anticipated a bonus. *See* G.L.1956 (1969 Reenactment) § 9–1–20.[2] This statute is applicable since the jury could have reasonably believed that plaintiff was not aware of the termination of his bonus payments. Thus, since plaintiff's complaint was filed on July 18, 1979, it was within the six-year limit set forth in § 9–1–13.[3] We hold, therefore that the issue was properly submitted to the jury by the trial justice and that the jury correctly answered the question in plaintiff's favor.

## III

■ The plaintiff next contends that he was entitled to profits from Heirling of Switzerland Ltd., a Rhode Island corporation, and Heirling Boot Sales, a partnership, two businesses in which defendant Jacober had an interest with other individuals. These companies were formed in 1977 and 1970 respectively. The plaintiff had been receiving a straight salary since 1972. He had no interest in these entities nor did he have any reason to expect to receive any interest. Moreover, as the trial justice determined, plaintiff was an employee of defendant and not a shareholder. Therefore, defendant was not in a fiduciary relationship with plaintiff. Such a fiduciary relationship exists between a corporation and its stockholders, not its employees. *See Sladen v. Rowse,* 115 R.I. 440, 347 A.2d 409 (1975). Thus, the trial court ruled that plaintiff did not have standing to assert a claim for damages against the profits of these two companies. We agree with this decision and find that the trial justice's decision was well supported by the evidence adduced at trial.

## IV

The defendants further maintain on appeal that plaintiff was not entitled to recover profits from the two other Alpine Ski Shops because he did not have a contract with these stores and because they were separate and distinct corporations from the original ski shop. However, Norman Gessman, a certified public accountant for Alpine Shops, testified that there was a complete merger and transfer of all the assets (minus the liabilities) of J & T, Inc., to Alpine Ski Shop, Inc. Moreover, the evidence showed that there was a sharing or shifting of inventory and personnel among

**2.** General Laws 1956 (1969 Reenactment) § 9–1–20 provides:

"Time of accrual of concealed cause of action. —If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him the existence of the cause of such action, said cause of action shall be deemed to accrue against the person so liable therefor, at the time when the person entitled to sue thereon shall first discover its existence."

**3.** Section 9–1–13 was amended by P.L.1978, ch. 299, § 2, raising the statute of limitations in civil actions from six years to ten years.

the three Alpine Ski Shops, and advertising was coordinated for all three stores. In addition, the contract specifically stated that plaintiff was entitled to a percentage of the net profits of the ski department of J & T, Inc., or any other corporation that might be established of which J & T, Inc., was the owner. From this evidence the jury found that all three stores were owned, established, and maintained by defendant. A review of the theory of corporate merger at this point will assist us in determining whether J & T, Inc., and the Alpine Ski Shop, Inc., are one and the same.

■■■■ A corporate merger consists of a combination whereby one of the constituent corporations remains in existence, absorbing in itself all the other constituent corporations which cease to exist. 19 Am. Jur.2d, *Corporations* § § 1491, 1492 (1965). A sale of assets by a corporation describes a transaction in which all or substantially all of the assets of the corporation are sold. *McKee v. Harris—Seybold Co., Division of Harris—Intertype Corp.,* 109 N.J.Super. 555, 264 A.2d 98 (1970), *affd.,* 118 N.J.Super. 480, 288 A.2d 585 (1972) (citing *Sterling v. Mayflower Hotel Corp.,* 33 Del.Ch. 293, 93 A.2d 107 (1952) ). A merger is distinguishable from a sale-of-assets transaction in that a merger usually contemplates the continuance of the enterprise involved and of the shareholder's investment in it, although in altered form, while an assets transaction usually contemplates liquidation of the enterprise. *Id.*

According to Mr. Gessman, J & T, Inc., merged with Alpine Ski Shop in 1973. Moreover, the trial justice did not find that an agreement existed evidencing a sale-of-assets transaction between J & T, Inc., and Alpine Ski Shop. In *Cranston Dressed Meat Co., Inc. v. Packers Outlet Co.,* 57 R.I. 345, 349, 190 A. 29, 31 (1937), we stated that "[w]hether or not a given transaction amounts to a continuation of an old corporation by means of a new one must be determined by the court in any case after a consideration of the facts and circumstances therein."

■■■■ Viewing all the facts and circumstances in this case, we agree with the trial justice's determination that Alpine Ski Shop, Inc., absorbed the business and property of J & T, Inc., and was merely a continuation of the latter corporation although in altered form. Furthermore, the manner in which business was conducted among the three Alpine Ski Shops connotes a unified corporate system. Therefore, it was not an abuse of discretion by the trial justice to allow the introduction of evidence on the other two Alpine Ski Shops.

## V

The defendants next argue that the trial justice was incorrect in allowing plaintiff to recover damages based upon the net profits derived from all items sold in the Alpine Ski Shop stores and in not granting defendants' motion for a new trial. The trial justice granted defendants' motion for a new trial conditionally, but defendants argue that he erred in assessing the amount of damages.

■■■■ The standard by which a trial justice must consider a motion for a new trial is settled law in this jurisdiction. *See Gordon v. St. Joseph's Hospital,* 496 A.2d 132 (R.I.1985); *Gallo v. Arnold,* 476 A.2d 118 (R.I.1984); *Barbato v. Epstein,* 97 R.I. 191, 196 A.2d 836 (1964). The trial justice must sit as a seventh juror, independently reviewing the evidence and assessing the credibility of witnesses. In his decision, the trial justice must set forth the evidence he relies on and we will not disturb his decision absent the record revealing that he overlooked or misconceived relevant evidence on a material issue or was otherwise clearly wrong.

The trial justice stated that the jury verdict shocked his conscience. He found that the evidence showed that the contract was modified as to the method of payment and that the testimony clearly established that the parties never intended to have an eter-

nal contract. Furthermore, he determined that the contract was terminated in March 1979 and that plaintiff delayed in pursuing a remedy to recover the loss of his bonus payments. The trial justice's decision was based upon the testimony of plaintiff and defendant Jacober, and the experts who submitted documents concerning the profits of the three ski shops.

We have reviewed the evidence and the decision of the trial justice and the basis of his decision. We are of the opinion that the trial justice neither overlooked nor misconceived the evidence in awarding plaintiff damages from September or October 1972 through March 1979 in the amount of $199,661. However, since plaintiff did not agree to the remittitur, we must order a new trial. *Kelaghan v. Roberts*, 433 A.2d 226 (R.I.1981). Accordingly, we remand this case to the Superior Court for a new trial to determine the amount of damages owed to plaintiff.

### VI

Lastly, the plaintiff contends that the court had no authority to set the interest on the judgment. The plaintiff relies on § 9–21–10 and *Paola v. Commercial Union Assurance Companies*, 461 A.2d 935 (R.I.1983).

In his decision to grant a remittitur, the trial justice addressed the issue of interest and ruled that plaintiff's award was $199,661 and that plaintiff was entitled to interest for the nine months preceding plaintiff's discharge in March of 1979, or $19,830. The trial justice reasoned that the contract was terminable at will and that plaintiff sat on his rights from 1973 to 1979, but that he was not guilty of laches. The trial justice arrived at the interest amount by using the charts in evidence showing the profit for 1979 and subtracting an amount representing the months plaintiff worked during 1979.

In *Paola* we construed § 9–21–10 to require that interest be added automatically to the award of damages once the claim is reduced to judgment. 461 A.2d at 937. In the case before us, judgment was never entered because the trial justice conditionally granted defendants' motion for a new trial. Therefore, our ruling in *Paola* is inapposite to this case.

In *Tilley v. Mather*, 84 R.I. 499, 502, 124 A.2d 872, 874 (1956), we stated that "[i]t is the duty of a trial justice when he reduces the amount of a verdict on the grounds that it is grossly excessive to indicate reasonably in what particular he holds the award to be grossly excessive." Although generally the determination of liability is the jury's responsibility, a trial justice may interfere on a motion for a new trial if after engaging in a review under *Barbato* "he concludes that the verdict fails to respond to the merits of the controversy and to administer substantial justice." *Turgeon v. Davis*, 120 R.I. 586, 591, 388 A.2d 1172, 1175 (1978) (citing *Petrella v. Izzo*, 117 R.I. 459, 367 A.2d 1078 (1977)). From this case law it is clear that a trial justice is allowed to substitute a new award for the jury's award where the latter award fails to respond to the facts and circumstances of the case. Considering this in conjunction with a strict reading of § 9–21–10 and its legislative purpose, we conclude that a trial justice does have the authority when deciding a motion for a new trial and ordering a remittitur in lieu of a new trial, to fix the amount of the total judgment including interest. However, this court will review the decision in light of the facts of the case and will determine whether the trial justice's decision is reasonable in light of the evidence submitted on damages.

In the present case we have reviewed the trial justice's method of computing the damages and the interest in light of the entire record, and we are of the opinion that his decision was reasonable and responsive to the damages in evidence.

For the reasons stated, the plaintiff's appeal is denied in part and affirmed in part. The defendants' appeal is denied in part and affirmed in part, and the papers

are remanded to the Superior Court with direction to order a new trial to determine the amount of damages to which the plaintiff is entitled.