**Thomas DEMIRS**

v.

**PLEXICRAFT, INC.**

Civ. A. No. 90–0309–P.

United States District Court,
D. Rhode Island.

Nov. 12, 1991.

Gary D. Berkowitz, Pawtucket, R.I., Thomas W. Pearlman, Pearlman & Vogel, Providence, R.I., for plaintiff.

William P. Robinson, III, Edwards & Angell, Providence, R.I., Karen J. Kubin, Michael G. Rhodes, Aaron P. Morris, Cooley,

Godward, Castro, Huddleston & Tatum, Newport Beach, Cal., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Defendant in the above-captioned case has moved for summary judgment. For reasons which follow, the motion is denied in part and granted in part.

### I.

Plaintiff Thomas Demirs is a citizen of Rhode Island, and is suing defendant Plexicraft, Inc., a citizen of New Jersey, for breach of an alleged provision of the employment agreement between plaintiff and defendant. Plaintiff was employed by defendant from 1968 until 1989.

Plaintiff claims that, under the parties' original employment agreement, he was to receive ten percent of defendant's stock as part of his compensation. Plaintiff further alleges that as late as the fall of 1985, defendant continued to respond to his numerous inquiries regarding this stock transfer by reaffirming its intention to transfer the stock to plaintiff. Plaintiff claims to have relied to his detriment on these representations by defendant, turning down more lucrative employment offers from other firms in the belief that the Plexicraft stock transfer would be forthcoming. There is written documentation (in the form of a memo from plaintiff to defendant) indicating that as late as 1973, negotiations were ongoing regarding the terms of the stock transfer; however, no mention appears to have been made of the transfer in any of the parties' written compensation agreements subsequent to the 1968 agreement. The stock transfer was, in fact, never effectuated, and in 1989, defendant sold off its assets in a bulk sale and ceased its operations.

Plaintiff is now suing defendant for ten percent of defendant's proceeds from its asset sale, as well as for a ten percent present interest in realty still owned by defendant. Defendant, in its answer, denies that any mutual understanding was ever reached to the effect that plaintiff was to receive ten percent of its stock in exchange for his services. For this reason (as well as others discussed below), defendant has moved for summary judgment in its favor.

### II.

Defendant's motion for summary judgment is made pursuant to Fed.R.Civ.P. 56(c), which states:

> The judgement sought shall be rendered forthwith if the pleadings, depositions, answers or interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law.

As the United States Supreme Court has stated, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The First Circuit has concluded that an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir.1988) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

### III.

It is clear that in the case at bar, there was never any explicit writing between the parties indicating that plaintiff was to receive ten percent of defendant's stock. The original employment offer extended to plaintiff by defendant in September 1968 stated, "It is understood that we will permit you to acquire a small interest in the corporation under such terms and conditions as may be mutually acceptable. We will make every effort to detail this arrangement in the next few months."

Defendant contends that the September 1968 agreement was unambiguous, and that any evidence of prior or contemporaneous oral negotiations is inadmissible under

the parol evidence rule. If defendant were correct, summary judgment would be appropriate; the parol evidence rule would remove the only factual basis for plaintiff's claim, since the written contract itself did not promise plaintiff ten percent of defendant's stock at *any* price.

This Court's analysis of the parol evidence rule as it relates to the facts in the case at bar is governed by Rhode Island law. *See Inleasing Corp. v. Jessup,* 475 A.2d 989, 993 (R.I.1984); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Rhode Island follows the majority common law parol evidence rule, which states, "In the absence of fraud or mistake, parol evidence of prior or contemporaneous agreements is generally inadmissible for the purpose of varying, altering, or contradicting a written agreement." *See, e.g., Fram Corp. v. Davis,* 121 R.I. 583, 401 A.2d 1269, 1272 (1979). The purpose of the rule is to "enable parties to make their written contracts the only evidence of their undertakings and to protect themselves against the hazard of uncertain oral testimony in respect to their engagements." *Supreme Woodworking v. Zuckerberg,* 82 R.I. 247, 107 A.2d 287, 290 (1954). The parol evidence rule is applicable solely to completely integrated agreements. *See City of Warwick v. Boeng Corp.,* 472 A.2d 1214 (R.I.1984); 3 *Corbin on Contracts* § 581 (1960). Thus, the threshhold question is whether or not the September 1968 agreement was a complete integration of all pertinent negotiations made prior to or at the time the written agreement was executed.

According to the *Restatement (First) of Contracts* § 228, "an agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." Integration is not as conceptually straightforward as the *Restatement* might suggest; as Corbin points out, "[o]ne of the parties always asserts that the writing is an integration and the other denies it...." 3 *Corbin on Contracts* § 581. The case at bar demonstrates the accuracy of this observation.

■ It is quite clear that the parties' September 1968 agreement was *not* intended as a complete integration of their negotiations, since it left one of the important elements of the deal—the stock transfer—largely undefined. A host of previous decisions indicate that ambiguity in a written agreement renders parol evidence admissible. In *Fashion House, Inc. v. K Mart Corp.,* for example, the First Circuit opined:

If ... a contract is thought ambiguous, the court may receive extrinsic evidence, even parol evidence, to determine whether uncertainty exists. Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken. Determining whether or not a contract is ambiguous is ..., a matter for the court.

892 F.2d 1076, 1083 (1st Cir.1989) (citations omitted). *See also Sco–Mar, Inc. v. Rhode Island Tool Co., Inc.,* 115 R.I. 516, 349 A.2d 609, 609 (1976) ("[T]he disputed provision of the writing in question is susceptible of more than one meaning. Evidence of prior or contemporaneous oral statements was therefore admissible to aid in its interpretation and was not barred by the parol evidence rule"); *Hawkins v. Smith,* 105 R.I. 669, 254 A.2d 747, 751 (1969) ("Parol or extrinsic evidence is admissible to explain an agreement which is unclear, or inexplicit, or ambiguous") (citations omitted).

Plaintiff and defendant disagree about the meaning of the disputed portion of their 1968 agreement precisely because its meaning is unclear. The ambiguity of the writing leaves room for debate between reasonable persons as to the promises and obligations it represents. As this Court reads the parties' original agreement, ambiguity lies in the phrases "a small interest" and "under such terms and conditions as may be mutually acceptable." Plaintiff claims the small interest was mutually understood to be ten percent, with the only condition being his employment with defen-

dant. Defendant, on the contrary, argues that neither of these two phrases was ever given a more complete, mutually acceptable interpretation. The only way to resolve this dilemma is to admit parol evidence, which will hopefully illuminate the Court as to the true meaning of the parties' agreement. Thus, defendant is not entitled to summary judgment on the basis of the parol evidence rule.

As for defendant's contention that it is entitled to summary judgment "because despite ongoing negotiations, there was no meeting of the minds between the parties with regards to the transfer of stock" (*see* Def. Memo. at 7), this argument fails as well. Parol evidence offered as to negotiations prior to, concurrent with, and subsequent to, the September 1968 agreement will indicate whether or not such a meeting of the minds did, in fact, exist regarding the stock transfer. The sole issue in this case is whether or not a specific ten percent agreement was reached. This is a factual issue which can only be resolved at trial.

### IV.

Defendant has also argued that it is entitled to summary judgment because oral stock transfer contracts are inadmissible under the Statute of Frauds. *See* Memorandum in Support of Defendant's Response to Plaintiff's Objection to Motion for Summary Judgment at 5–10. Defendant relies on R.I.GEN.LAWS § 6A–8–319 (Supp.1991), which states:

Statute of Frauds—A contract for the sale of securities is not enforceable by way of action or defense unless:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(b) delivery of a certificated security or transfer instruction has been registered and the transferee has failed to send written objection to the issuer within ten (10) days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment;

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten (10) days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.

Plaintiff, however, contests the applicability of the Statute of Frauds to the instant case, arguing that Plexicraft's agreement with Demirs did not fit under the Uniform Commercial Code's definition of a "sale of securities." *See* Plaintiff's Response to Defendant's Supplemental Memorandum in Support of His Objection to Summary Judgment at 2–3.

This Court need not hasten to decide whether or not the alleged agreement between Plexicraft and Demirs is subject to the Statute of Frauds. It is true that if the agreement *did* constitute a sale of securities, it *would* fit within the parameters of the Statute of Frauds, and would thus be an unenforceable agreement (assuming the sale did not comply with subsection (a), (b), (c) or (d) of the Statute of Frauds as set forth above). However, there is a related issue which must be resolved prior to any Statute of Frauds decision: plaintiff claims Plexicraft should be equitably estopped from raising the Statute of Frauds defense in order to avoid performing its obligations under the alleged agreement. *See* Pltf.'s Response to Def.'s Supp.Memo. at 3.

Equitable estoppel "is designed to aid the law in the administration of justice where without its aid injustice might result." 28 *Am.Jur.2d* Estoppel and Waiver § 28 (1990). In the instant case, plaintiff seeks estoppel to prevent what he views as an

injustice—that is, defendant's failure to live up to its promise to him. In other words, plaintiff's estoppel theory is that defendant should not be permitted to "hide" behind the defense of Statute of Frauds because this would make it impossible for plaintiff to hold defendant accountable for reneging on its agreement.

■ Before the doctrine of estoppel can be invoked by this Court to bar Plexicraft from asserting a Statute of Frauds defense, the requisite elements of estoppel must first be established. The "indispensable elements" of estoppel have been described as:

> first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury. The burden of proving the elements of such a claim is upon the one who asserts it.

*Lichtenstein v. Parness*, 81 R.I. 135, 99 A.2d 3, 5 (1953). Moreover, "[w]hether [these elements] are present, and whether the doctrine of equitable estoppel should therefore be applied, in a particular case, depends, of course, upon the facts and circumstances of that case...." 28 *Am. Jur.2d* Estoppel and Waiver § 35 (1990).

In this case, plaintiff and defendant disagree as to whether plaintiff detrimentally relied on the alleged stock transfer agreement. According to plaintiff:

> [I]n 1973 a company known as Graphco offered him a job, and went to the point of reducing the terms to writing. Thomas Demirs states that he would have followed through and accepted the job but for the fact that Plexicraft represented to him that he would receive the same emoluments if he stayed. Primarily, these added incentives were the position of vice president and stock.

*See* Pltf.'s Response to Def.'s Supp.Memo. at 1. If these assertions prove true, plaintiff clearly did detrimentally rely on defendant's representation that stock would be transferred to him as part of his remuneration. Not surprisingly, however, defendant takes issue with plaintiff's factual characterization, stating, "the plaintiff was not induced by the defendant to accept employment with Plexicraft and forego any subsequent job offers that may or may not have been made.... Rather, such decisions by the plaintiff were an exercise of his own business judgement." *See* Def.'s Supp. Memo. at 10.

■ As noted above, the applicability of equitable estoppel is dependent upon the facts of each case. Here, we have factual disputes as to the following: (1) the presence or absence of plaintiff's detrimental reliance; (2) on a promise defendant may or may not have made; (3) with or without the intent to induce particular action by plaintiff. Factual disputes such as these can only be resolved at trial. Therefore, this Court can not grant summary judgment to defendant on the grounds of Statute of Frauds, since it remains to be seen whether or not plaintiff will successfully invoke the doctrine of equitable estoppel to bar Plexicraft's Statute of Frauds defense.

## V.

Both parties concede that the applicable statute of limitations for plaintiff's action is ten years. *See* R.I.G.L. § 9–1–13 ("all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."). A dispute does exist, however, as to when plaintiff's cause of action accrued.

■ Defendant contends that summary judgment should be entered in its favor because plaintiff's claim is time-barred. In this regard, defendant argues that plaintiff's breach of contract claim accrued on or shortly after September 25, 1968, the date of the parties' original agreement. *See* Def.Memo. at 10. Alternatively, defendant argues that, "the most recent document plaintiff can point to as purportedly reflecting negotiations of the parties relative to the transfer of stock pursuant to their original agreement is a memorandum from the plaintiff to defendant dated April

12, 1973." *See* Def.Memo. at 11. Under this theory, plaintiff's cause of action accrued in April 1973. Whether the date of accrual was 1968 or 1973, however, the result would be the same: plaintiff's present action would be barred because the statute of limitations would have run its course years ago.

Not surprisingly, plaintiff sees things differently. According to his version of the story, this action did not accrue until the fall of 1985. *See* Memorandum of Law in Support of Plaintiff's Objection to Motion for Summary Judgment at 1. Until that point in time, plaintiff contends, the parties continued to negotiate periodically regarding the stock transfer. Plaintiff insists that defendant repeatedly promised that the transfer would be effectuated. It was not until "after 1985 [that] he lost any hope that Plexicraft would fulfill its promise...." *See* Pltf.Memo. at 2. Until that time, defendant allegedly continued to acknowledge the existence of the debt, and to reaffirm its intention to pay it. Because of these promises to pay, which did not cease until 1985, plaintiff believes the statute of limitations did not begin running until that time.

Once again, the dispute between plaintiff and defendant boils down to a question of fact. Plaintiff relies on his version of the facts in concluding that the statute of limitations *has not* run. Conversely, defendant's claim that the statute of limitations *has* run is predicated wholly on its own, quite distinct, recitation of facts.

As early as 1946, the Supreme Court of Rhode Island indicated that the resolution of such a factual dispute concerning the statute of limitations was properly undertaken by the jury, not the Court. *See Personal Finance Co. v. Franco,* 72 R.I. 85, 48 A.2d 355, 358 (1946). This logic was revisited most recently in *Dionne v. Baute,* 589 A.2d 833, 835 (R.I.1991) ("[W]hen the evidence raises factual questions involving the statute of limitations, such questions should be submitted to the jury.") (*citing Bader v. Alpine Ski Shop, Inc.,* 505 A.2d 1162 (R.I.1986). *See also Rodriques v. Santos,* 466 A.2d 306 (R.I.1983).

The law is clear, and its applicability to the case at bar is equally clear. Plaintiff and defendant have each presented a set of facts which supports their argument regarding the date of accrual of plaintiff's cause of action. As a result, one set of facts contradicts the other. Based on the case law cited above, it is clearly the jury's job in such a situation to hear the evidence proffered by each party, weigh its credibility, and decide whether or not the statute of limitations bars this action. Thus, defendant's request for summary judgment on the basis that plaintiff's claim is time-barred is denied.

## VI.

The last argument defendant puts forth in support of its motion for summary judgment is that there is no basis for the imposition of a constructive trust. On this point, the Court agrees with defendant.

> A constructive trust does not arise out of a breach of a written contract, and the mere failure to perform an agreement or to carry out a promise cannot in itself give rise to a constructive trust, since such a breach does not in itself constitute fraud or abuse of confidence requisite to the existence of a constructive trust.

89 *C.J.S.* Trusts § 142 (1955). As defendant notes, "plaintiff has alleged no fact which would support a claim that the assets and profits earned by the defendant by its sale of the stock of Plexicraft were fraudulently retained and should be transferred to the plaintiff in the interest of justice." *See* Def.Memo. at 12.

Plaintiff concedes in his Memorandum that any fraud-based claim against defendant is barred by the statute of limitations. *See* Pltf.Memo. at 2. Thus, he does not, and indeed can not, dispute defendant's statement that imposition of a constructive trust is inappropriate in this case. Absent a showing of fraud, there can be no constructive trust; since fraud is not an element of plaintiff's case, no constructive trust will be imposed against the defendant. However, this ruling in no way disposes of the need for a trial to resolve the larger matter before this Court (namely,

whether or not the defendant breached its contract with plaintiff), since plaintiff's prayer for damages survives with or without a constructive trust.

## VII.

Based upon the foregoing, defendant's motion for summary judgment is denied, except insofar as this Court will abstain from imposing a constructive trust in this case.

SO ORDERED.