ALZADA T. STEDMAN *vs.* DANIEL S. HINMAN, *Admr.*

JULY 7, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This action of assumpsit on a promissory note was brought against the administrator of the estate of Robert A. Wilber, late of South Kingstown, deceased. The defendant pleaded the general issue and the statute of limitations. The case was tried before a justice of the superior court sitting with a jury. During the trial the parties agreed that all preliminary steps necessary to bring this action were duly taken. At the conclusion of all the evidence, the plaintiff and the defendant each moved for a direction of verdict. The trial justice granted the motion of the former, and denied that of the latter. The defendant's exceptions to these two rulings are before us in this case. The note is as follows:

"$400.                    East Greenwich, Nov. 7, 1910.

For value received, we promise to pay Alzada T. Stedman, wife of Harrison Stedman, Four Hundred Dollars. Interest at 6% annually.

Robert A. Wilber
Harriet C. Wilber
Sarah M. Wilber."

The following entries appear on the back of the note: "May 7—1916 Rec'd $100.00. Intrest Paid to Nov. 7—1934." The first entry is written in ink, the second, in pencil. At the time of the trial Harriet C. Wilber was dead and Sarah M. Wilber was alive. Hereinafter, the name Wilber will refer to Robert A. Wilber unless otherwise indicated.

The plaintiff testified, of her own knowledge, that she lent the $400 to "Miss Wilber" and received the note from her. No question as to the authenticity of the note is involved in this case. She further testified that thereafter her husband, Harrison Stedman, acted for her in the matter; that she received $100 on the principal of the note from him; and that all payments of interest on the note were made to him.

Harrison Stedman testified that he collected all payments made on the note, both as to principal and interest, and that

he kept a record of such payments in two memorandum books. These books were produced by him and were introduced in evidence as plaintiff's exhibits 2 and 3. A typewritten copy of the entries in both of these exhibits was also introduced in evidence as plaintiff's exhibit 3 A. Exhibit 3 is not before us, as it apparently was withdrawn by plaintiff's counsel after the trial, according to a receipt signed by him that we find among the papers in the case.

The entries in exhibit 2 cover all payments allegedly made to Stedman, whether on principal or as interest from the date of the note, November 7, 1910 to and including November 26, 1929. According to exhibit 3 A, the entries in exhibit 3, with reference to the receipt of interest by Stedman on the unpaid balance of $300 on the note, were as follows: "Nov. 21, 1930 Rec'd Interest to Nov. 7, 1931 18.00; Nov. 16, 1931 Interest to Nov. 7, 1932 18.00; Nov. 26, 1932 Interest to Nov. 7, 1933 18.00; Sept. 26, 1933 Interest to Nov. 7, 1934 18.00."

Stedman, who apparently relied on his entries in exhibit 3 for specific dates, testified that interest on the note was always paid in advance; that Wilber made all such payments personally and was given a receipt on each occasion; that the last payment was made by him on September 26, 1933 "beside the woodshed" or "beside the garage" on plaintiff's premises; and that this payment covered the interest period ending November 7, 1934. It appearing in evidence that Wilber was committed to the state hospital March 26, 1933, Stedman was asked in cross-examination how it was possible for him to have received personally from Wilber a payment of interest on September 26, 1933 at the place described by him. His explanation, which we gather from a series of questions and answers, in substance was that he had made a mistake in the entry on exhibit 3 of the date of such payment; that the year must have been 1932; that in that year Wilber must have paid him interest for two years in advance; and that perhaps he and Wilber made "some arrangements" at whatever time the latter paid interest on the note to November 7, 1934.

He further testified that, according to his memoranda, Wilber had paid him a total sum of $483 as interest from November 7, 1910, the date of the note, to the date of the last payment; that the interest on the note from November 7, 1910 to November 7, 1934 amounted to only $464; and that on this computation interest on the note was actually paid well into 1935. The writ in the instant case is dated September 20, 1940. Our statute of limitations in this class of cases provides that action shall be commenced "within 6 years after the cause of action shall accrue, and not after." General laws 1938, chapter 510, § 3.

The only witness for the defendant was Dorothy W. Spaulding, a daughter of Wilber. She testified that, when her father was committed to the state hospital, she went through his papers and found no receipt for interest payments on the note under consideration, and that she did not learn of the existence of that note until 1939. Other than confirming the dates of her father's commitment to the state hospital and of his death, the rest of her testimony had no material bearing on the issues in the case. Sarah M. Wilber, one of the makers of the note, did not testify and no reason was given for her absence as a witness.

The defendant moved for a direction of verdict on the ground that the plaintiff could not have received a payment of interest from Wilber on September 26, 1933, as recorded by him in exhibit 3, because Wilber at that time was confined in the state hospital. In opposing this motion, plaintiff's counsel argued that Stedman's testimony had to be considered. "Now, the fact that he may have made a mistake in his memorandum there in his book doesn't throw Mrs. Stedman out of court. I think it is still a question of fact for the jury to say whether or not those books—the sums stated as having been received are accurate. I do not think that the dates when they were received are material."

At this point the trial justice asked plaintiff's counsel: "Have you any motion to make?" and he answered: "Well, I could ask for a direction of the verdict on the testi-

mony . . . ." He then proceeded to argue as if he actually had made such a motion, urging that the only opposing evidence the defendant had was the testimony that Wilber was an inmate of the state hospital at the time the plaintiff claimed to have received the last interest payment from Wilber personally. "It might have been paid by someone else as far as we know. That is six years ago. The Court: That is the only question here. I see no reason, personally, to doubt the testimony of the plaintiffs. The only question is whether the jury would be entitled to draw adverse interest from those records." Apparently the stenographic record should have read "Adverse inference", because, after some further argument by plaintiff's counsel, the trial justice said: "I can't see any disputed question of fact unless the jury might be entitled to draw an adverse conclusion from his (Stedman's) books. If you care to make a motion for a direction I will entertain it." Thereupon counsel moved that a verdict be directed for the plaintiff in the sum of $300, the unpaid balance of the note, plus interest for six years, or $108, a total of $408.

Defendant's counsel opposed the granting of such a motion and argued that, as the defendant's plea of the statute of limitations was practically the basis of his entire defense, it was a question of fact when the last interest payment was really made; and further, whether interest was actually paid in advance, considering the fact that the note contained no such provision. "I think the jury can well be justified in returning a verdict for the defendant. The Court: Well, if they did, I would set it aside at once. I think this plaintiff is entitled to his money." The trial justice then directed a verdict for the plaintiff for $408.

The question of Stedman's credibility is the controlling factor in this case. His testimony is reasonably open to conflicting inferences and conclusions. Our well established and often repeated rule is that on a motion for a directed verdict the evidence and the reasonable inferences therefrom must be viewed most favorably for the party opposing the motion:

and further, that the credibility of the witnesses or the weight of the evidence is not before the trial justice in passing on such a motion. In the instant case, the trial justice observed this rule in denying the defendant's motion for a directed verdict, but clearly failed to apply it in ruling on a similar motion by the plaintiff.

It was for the jury to say in the first instance whether or not they believed Stedman. If they believed him, the defendant's plea of the statute of limitations would have been ineffective; on the other hand, if they did not believe him, such plea would have constituted a valid defense to plaintiff's claim. What the trial justice might have done, if the jury had returned a verdict for the defendant and the plaintiff had moved for a new trial, was an entirely separate matter, not involved in this case, to be determined under very different rules from those that applied in ruling on the motions in question here. In the circumstances of this case, it is clear to us that the trial justice did not err in denying defendant's motion for a directed verdict, and that he committed reversible error in directing a verdict for the plaintiff.

The defendant's exception to the denial of his motion for a directed verdict is overruled; his exception to the direction of a verdict for the plaintiff is sustained, and the case is remitted to the superior court for a new trial.

*Grim & Littlefield, Benjamin W. Grim,* for plaintiff.
*William H. Leslie, Jr.,* for defendant.