**Margaret Ann DIONNE, Individually and in her capacity as Administratrix of the Estate of Charles E. Dionne, Jr.**

v.

**Robert E. BAUTE, M.D. et al.**

**No. 89–498–Appeal.**

Supreme Court of Rhode Island.

April 17, 1991.

David N. Bazar, Stephen Rappoport, Rappoport, Audette, Bazar & Farley, East Providence, for plaintiff.

William F. White, Alan R. Tate, Tate & Elias, P.C., Providence, for defendants.

OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiff, Margaret Ann Dionne, appeals from the trial justice's grant of a motion for summary judgment in favor of the defendant Joseph Paul Padayhag, M.D., on the grounds that the plaintiff's claim was barred by the pertinent statute of limitations. Hereafter we shall refer to the deceased, Charles E. Dionne, Jr., and .

the defendant physicians, Robert E. Baute, David B. Danzer, and Joseph Padayhag, by their last names.

Suit in this controversy was commenced on November 14, 1985, when Mrs. Dionne, as an individual and as the administratrix of her late husband's estate, filed a complaint in the Providence County Superior Court against defendants Baute, Danzer, and the Kent County Memorial Hospital. Mrs. Dionne alleged that defendants were responsible for the wrongful death of her husband. Almost three years later, in mid-July 1988, Mrs. Dionne filed an amended complaint in which she added Padayhag as a defendant.

Padayhag's counsel responded to Mrs. Dionne's complaint by filing a motion for summary judgment pursuant to the terms of Rule 56(c) of the Superior Court Rules of Civil Procedure. Padayhag took the position that the suit was untimely because it was instituted more than three years after Dionne's death and more than three years after Mrs. Dionne had knowledge of Padayhag's participation in the treatment of her husband.

The record indicates that on August 2, 1983, Dionne went to the emergency room in Kent County Memorial Hospital, complaining of chest pain as well as numbness in his left arm. Danzer, who was on duty in the emergency room, examined Dionne. In addition to the examination, Danzer provided Dionne with oxygen, placed him on a heart monitor, and reviewed the results of an electrocardiogram.

Following this examination Danzer placed a telephone call to Dionne's treating physician, Baute. Dionne had been treating with Baute since 1974 for problems associated with his heart. When Dionne came to the emergency room, Padayhag was "on call and covering" for Baute. During this period Baute and Padayhag had a professional association that is described in an answer to one of Mrs.

Dionne's interrogatories as a "handshake partnership." On the day in question Padayhag returned the phone call from the emergency room concerning Dionne's condition.

Padayhag spoke with Danzer. Danzer informed Padayhag of the nature of Dionne's complaints and also notified Padayhag that Dionne was being discharged because the severity of his symptoms appeared to have abated.

Not only does Mrs. Dionne claim that Padayhag failed to make a notation in Dionne's file regarding Danzer's treatment, but she also faults him for failing to inform Baute of the treatment afforded Dionne in the emergency room. It appears that Dionne was unable to schedule an immediate appointment with a physician. On August 16, 1983, Dionne suffered a fatal heart attack.

In granting Padayhag's motion for summary judgment, the trial justice expressed the belief that Mrs. Dionne had adequate notice of Padayhag's involvement in the treatment of her husband when Mrs. Dionne's attorney obtained her husband's medical records in January 1984.

At this point we would emphasize that this court, in *Wilkinson v. Harrington,* 104 R.I. 224, 234, 243 A.2d 745, 751 (1968), ruled that the statute of limitations in a medical-malpractice litigation does not commence until the plaintiff discovers, or in the exercise of "reasonable diligence" should have discovered, that he has sustained an injury as a result of the physician's negligent treatment. This standard was codified by the Legislature and is set forth in G.L.1956 (1985 Reenactment) § 9–1–14.1.[1]

In this dispute there is no question regarding Mrs. Dionne's knowledge of her husband's injury. The controversy before us centers on Mrs. Dionne's contention that she did not know of Padayhag at the time

---

1. General Laws 1956 (1985 Reenactment) § 9–1–14.1(b) provides that

"[i]n respect to those injuries due to acts of medical malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the

incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of medical malpractice should, in the exercise of reasonable diligence, have been discovered."

she instituted this suit. Admittedly this court has not determined whether the reasonable-diligence standard of § 9–1–14.1 is applicable to the efforts of a plaintiff who seeks to determine potential defendants in a malpractice dispute.

■■■ In *Anthony v. Abbott Laboratories*, 490 A.2d 43, 46 (R.I.1985), this court indicated that in a products-liability action, the running of the statute of limitations would begin when the person discovers, or with "reasonable diligence" should have discovered, the wrongful conduct of a manufacturer. When applied to a medical-malpractice claim, we believe that this analysis suggests that it is necessary for a plaintiff to investigate diligently who may or may not have had any exposure to liability during treatment. The issue then becomes, in our opinion, whether in this dispute the standard of reasonable diligence has been satisfied so that it can be said that the trial justice's disposition by way of summary judgment was proper.

In granting Padayhag's motion for summary judgment, the trial justice emphasized that Mrs. Dionne had access to Dionne's medical records as early as 1984. He observed: "The hospital record was sought by counsel representing the plaintiff back in January of 1984, which identified the associate [Padayhag] as having returned the phone call. It takes no great inference to realize that when the phone call was returned, it was returned for the purpose of talking with the doctor who was on the scene. Later on, that fact was developed in an examination of other witnesses." It is obvious that the trial justice believed that Mrs. Dionne had failed to use reasonable diligence in her examination of the medical records furnished by defendant hospital. Consequently the correctness of the trial justice's ruling turns on whether the reasonableness of Mrs. Dionne's discovery investigation constituted a question of genuine material fact.

At this point our holding in *Bader v. Alpine Ski Shop, Inc.*, 505 A.2d 1162 (R.I. 1986), is of some relevance. There the trial justice determined that the validity of the statute-of-limitation defense presented a

question for the jury because it was dependent on whether the contract had been breached. This court has stated that when the evidence raises factual questions involving the statute of limitations, such questions should be submitted to the jury. *Id.* at 1166. Also, in *Stedman v. Hinman*, 67 R.I. 123, 128, 21 A.2d 10, 13 (1941), where the date of an interest payment was dispositive of whether the suit had been filed within the statutory period, this court stated that "[i]t was for the jury to say in the first instance whether or not they believed [the plaintiff]." If it believed the plaintiff, the statute of limitations would be ineffective.

*Bader* and *Stedman* suggest that a genuine issue of material fact in a statute-of-limitation defense is something more than that which is presently in dispute before us. That is, there is no question that Mrs. Dionne and her counsel received the medical report. The simple issue before us is whether Mrs. Dionne's conduct satisfied the reasonable-diligence standard set forth in the medical-malpractice statute. This is an issue of law.

Having gained access to her husband's records in 1984, Mrs. Dionne was thereby obligated, in our opinion, to have examined those documents in a thorough and diligent manner. Consequently Mrs. Dionne's contention that she did not learn of Padayhag's potential exposure until 1987 fails to nullify the trial justice's grant of Padayhag's motion for summary judgment.

■■ Mrs. Dionne also faults the trial justice for his refusal to invoke the "relation back" provisions of Rule 15(c) of the Superior Court Rules of Civil Procedure, which permits an amendment adding a party to relate back to the date of the original pleading if three conditions are met: (1) the claim against the new party arose out of the same occurrence as the original pleading, (2) the new party received notice of the institution of the action before the limitations period expired, and (3) the new party knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him. This court has held

that a decision whether to grant or to deny a motion to amend a pleading is a matter within the sound discretion of the trial justice and should not be disturbed in the absence of an abuse of discretion.

In *Laliberte v. Providence Redevelopment Agency*, 109 R.I. 565, 288 A.2d 502 (1972), it was emphasized that the plaintiff has the burden of proving that the circumstances placed the case within the ambit of Rule 15(c). It should be emphasized that the partnership that once existed between Baute and Padayhag was no longer in existence at the time Mrs. Dionne filed her original complaint. This fact affords little support to Mrs. Dionne's burden of showing that Padayhag had notice of the lawsuit and that he knew or should have known that he should have been a party to the original suit but for a mistake. This court believes that Padayhag's return of a single phone call on Baute's behalf cannot be classified as activity that would alert Padayhag of the likelihood of his being named as a defendant in this malpractice action.

In making these observations, we would also point out that Mrs. Dionne had the burden of proof to establish that this dispute was within the reach of Rule 15(c).

Of course, it is difficult to say one way or the other whether it was an oversight on Mrs. Dionne's part or a conscious decision on Mrs. Dionne's part not to sue Padayhag after she had viewed the medical report with his name thereon. However, it is suggested that whether it was an oversight on the part of Mrs. Dionne or a conscious decision on her part, the applicability of Rule 15(c) is unaffected.

The plaintiff's appeal is denied and dismissed. The judgment appealed from is affirmed.