Donna M. BENNER et al.

v.

J.H. LYNCH & SONS, INC., MJD Construction Corp. and the Rhode Island Department of Transportation, Dante E. Boffi, Jr., Director.

No. 93–81–M.P.

Supreme Court of Rhode Island.

May 12, 1994.

Edward P. Manning, Jr., Providence, for plaintiff.

Rebecca Tedford Partington, Sp. Asst. Atty. Gen., Edward Moses, John R. Mahoney, Asquith, Mahoney & Robinson, Providence, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us on a petition for certiorari wherein the Rhode Island Department of Transportation (RIDOT or the department) seeks review of the Superior Court's denial of its motion for summary judgment. The department moved for summary judgment on the ground that the plaintiffs' complaint was barred by the statute of limitations. We grant the petition and quash the order of the Superior Court. The facts insofar as pertinent to this petition are as follows.

On the morning of July 6, 1989, Robert C. Benner III (Benner), was traveling north near the intersection of Interstate 295 and Interstate 195 in Johnston, Rhode Island, when his vehicle struck a guard rail and then a flatbed truck parked in the right travel lane at a highway construction site. Benner was killed as a result of the accident.

A number of months later, Donna M. Benner (plaintiff), the decedent's wife, retained an attorney to investigate the cause of the accident. Sometime in 1991, after having become dissatisfied with her attorney, plaintiff hired a new attorney to pursue the case.

In November of 1991 plaintiff's new attorney filed a "Petition for Perpetuation of Testimony" in Superior Court pursuant to G.L. 1956 (1985 Reenactment) § 9–18–12, which allows for the perpetuation of testimony of witnesses "concerning any matter which is or may be the subject of litigation." The plaintiff sought to elicit testimony from the keeper of records and others associated with the State Police, the two construction companies working at the construction site, the Office of the State Medical Examiner, and RIDOT in order "to make a decision whether to litigate a possible wrongful death claim." In the petition plaintiff also stated that a "Rhode Island State Police accident reconstruction drawing indicates the possible failure to adequately notify oncoming motorists of the pending construction."

The petition for perpetuation of testimony was granted on November 18, 1991. Over the next several months, plaintiff took depositions from two troopers from the Rhode Island State Police and from the project coordinator of one of the construction companies involved in the project. The plaintiff also collected various documents, including police reports about the accident.

On April 1, 1992, plaintiff contacted Roy Anderson (Anderson), an engineer with expertise in highway safety, regarding the July 6, 1989 accident. The plaintiff ultimately retained Anderson on June 5, 1992. On July 24, 1992, Anderson rendered his opinion to plaintiff that the safety features of the highway construction site were negligently designed and/or maintained. On that date, three years and eighteen days after Benner's accident and death, plaintiff filed a complaint in Superior Court on her own behalf, as Benner's next of kin, and as parent/guardian

of her minor child, Robert C. Benner IV. The plaintiff brought the complaint against RIDOT and against the two private contractors working on the project, J.H. Lynch & Sons, Inc., and MJD Construction Corp., pursuant to the Rhode Island wrongful death act, G.L. 1956 (1985 Reenactment) §§ 10–7–1 to 10–7–14.

The department filed a motion for summary judgment, arguing that the statute of limitations had run for the bringing of the suit and also that the state was immune from suit in this instance under the doctrine of sovereign immunity. The trial justice denied the motion for summary judgment and stated that there existed a question of material fact in regard to whether plaintiff exercised due diligence in discovering the cause of and/or those responsible for Benner's death and that this factual question needed to be resolved before determining whether the statute of limitations had run. Moreover, the trial justice held that the question concerning whether possibly egregious conduct on the part of the state abrogated its sovereign immunity was also an issue of material fact to be determined by the factfinder.

In its brief to this court RIDOT seems to have abandoned the sovereign-immunity defense and has relied exclusively on a statute-of-limitations defense. However, RIDOT argues that the applicable statute of limitations is contained in G.L.1956 (1985 Reenactment) § 9–1–25, which provides that an action against the state must be brought "within three (3) years of the accrual of any claim of tort. Failure to institute suit within said three (3) year period of time shall constitute a bar to the bringing of said legal action." The department contends that this statute is to be strictly construed, especially because the waiver of sovereign immunity by the state is in derogation of the common law that did not allow any private actions to be brought against the state.

The plaintiff contends that the appropriate statute of limitations is contained in the wrongful death act, § 10–7–2, as amended by P.L.1989, ch. 525, § 1, which provides that

"[e]xcept as otherwise provided, every action brought pursuant to this chapter shall be commenced within three (3) years after the death of such person. With respect to any death caused by any wrongful act, neglect or default which is not known at the time of death, such action shall be commenced within three (3) years of the time that the wrongful act, neglect or default is discovered or, in the exercise of reasonable diligence, should have been discovered."

■ The plaintiff argues that the "discovery rule" set forth therein tolls the running of the statute of limitations until such time as a plaintiff, through reasonable diligence, can learn of the wrongful conduct of the parties responsible for the death of the decedent. The plaintiff therefore claims that the proper discovery date is July 24, 1992—the date Anderson rendered his opinion concerning the negligent design of the safety features at the construction site. At the least, plaintiff suggests, as the trial justice found, this is an issue of fact to be determined by the factfinder.[1]

The department counters that even if the statute of limitations in the wrongful-death statute, set forth in § 10–7–2, applies to actions against the state, the cause of action accrued on the date of the accident and the discovery rule contained therein would have no application.

I

■ First, we must consider whether a motion for summary judgment is the appropriate procedural vehicle by which to determine whether the discovery rule applies. In denying RIDOT's motion for summary judg-

---

1. The plaintiff makes an additional claim that the statute of limitations is tolled because, through the filing of the petition for the perpetuation of testimony, RIDOT had knowledge of the possibility of a wrongful-death claim being brought against it. This contention is completely without merit. General Laws 1956 (1985 Reenactment) § 9–1–12 specifically provides that an "action is commenced for purposes of the statute of limitations when the complaint is either filed with the court, deposited in the mail addressed to the clerk or delivered to an officer for service." There is no provision for any type of constructive notice to a defendant for purposes of tolling an applicable statute of limitations.

ment, the trial justice stated that whether plaintiff had exercised reasonable diligence to discover the tortious conduct of defendant was a question of fact and that the resolution of this question was inappropriate on motion for summary judgment.

In determining whether to grant summary judgment, the trial justice reviews all the pleadings, affidavits, admissions, and other appropriate evidence in the light most favorable to the nonmoving party and then determines if the moving party is entitled to judgment as a matter of law. *See Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 437 (R.I.1993). After such review, if any genuine issue of material fact to be resolved by the factfinder exists, the case is inappropriate for summary judgment. However, if no genuine issue of material fact exists, the judgment should be entered as a matter of law. *Id.* Upon review, we apply the same standard as the trial justice. *Id.*

In *Dionne v. Baute*, 589 A.2d 833, 835 (R.I.1991), we stated that on occasion, in order to determine whether a statute of limitations has run, a factual question must be determined by a jury (or other appropriate factfinder) as a predicate issue. Such cases involve circumstances in which the determination of the initial factual question essentially answers the question of liability of the parties. These instances include circumstances wherein the running of a statute of limitations was dependent upon knowledge that a contract had been breached, *see Bader v. Alpine Ski Shop, Inc.*, 505 A.2d 1162, 1166–67 (R.I.1986), or the question of whether an interest payment had been made by a certain date, *see Stedman v. Hinman*, 67 R.I. 123, 128, 21 A.2d 10, 13 (1941).

In *Dionne*, however, we went on to hold that "*Bader* and *Stedman* suggest that a genuine issue of material fact in a statute-of-limitation defense is something more than that which is presently in dispute before us. * * * The simple issue before us is whether [the plaintiff's] conduct satisfied the reasonable-diligence standard set forth in the medical-malpractice statute. This is an issue of law." 589 A.2d at 835; *see also Ashey v. Kupchan*, 618 A.2d 1268, 1270 (R.I.1993) (per curiam) ("application of the statute of limita-

tions is a matter of law for the trial justice to determine"); *cf. Rodrigues v. The Miriam Hospital*, 623 A.2d 456, 461 (R.I.1993) ("it is often necessary for the trial justice to find preliminary facts in deciding questions of law").

Similarly, the only issue before both the trial justice and this court is whether the reasonable-diligence standard contained within the discovery rule in § 10–7–2 is applicable to the case at bar. This question does not present a genuine issue of material fact as argued by plaintiff. As we stated in *Dionne*, it is a question of law for the trial justice to determine and for us to review using the same legal standard.

## II

The first issue to be addressed is the determination of which statute of limitations applies when a party brings a wrongful-death action against the state or one of its subdivisions or agencies. As noted above, RIDOT argues that the three-year statute of limitations contained in § 9–1–25 is applicable and should be strictly applied without consideration of any discovery rule. However, in *Bishop v. Jaworski*, 524 A.2d 1102 (R.I.1987), we stated that "[w]e have recognized * * * that in enacting the state tort claims act the Legislature meant to waive a major portion of the [state's] common-law sovereign immunity." *Id.* at 1103–04. We went on to hold that the Legislature intended to extend the statute of limitations contained in § 9–1–25 through enactment of § 9–1–19, which tolls the statute of limitations for parties while in their minority. 524 A.2d at 1104.

In the case at bar, we should similarly read the discovery rule contained in § 10–7–2 in *conjunction with* § 9–1–25 rather than read § 9–1–25 as a total supersession of all other limitations provisions contained in the General Laws. Because wrongful-death actions under § 10–7–1 may be maintained against the state, *see, e.g., Dempsey v. State*, 451 A.2d 273, 273 (R.I.1982) (per curiam); *Allen v. State*, 420 A.2d 70, 72 (R.I.1980); *see also* G.L.1956 (1985 Reenactment) § 9–31–1 (providing that the state shall "be liable in all actions of tort in the same manner as a

private individual or corporation"), we must infer that the Legislature intended to allow the discovery rule contained in § 10–7–2 to apply. The three-year limitation contained in § 9–1–25 certainly continues to apply in actions brought against the state. However, it does not diminish the protection the Legislature intended the state to have when it enacted § 9–1–25 to allow the discovery rule of § 10–7–2 for wrongful-death actions to apply against the state.

As we stated in *Bishop,* "Certainly there is nothing in § 9–31–1 or § 9–1–25 which bars tolling the § 9–1–25 statute of limitations in certain circumstances." 524 A.2d at 1104. We concluded that "the Legislature is presumed to know the law" and that if it had not wished the addition of the discovery rule to the wrongful death act to affect § 9–1–25, "it could easily have provided otherwise." 524 A.2d at 1104.

■ The discovery rule contained in § 10–7–2 therefore applies to wrongful-death actions brought against the state. However, our inquiry does not end with this conclusion. Although the discovery rule may apply to the state in a proper case, the case at bar does not present an appropriate context for its application.

### III

### A

In applying a discovery rule to prevent or toll the running of a statute of limitations, certain classic examples must be used as guides. In the medical-malpractice area such an example would be the leaving of a surgical sponge within the abdominal cavity after an operation. This act of negligence would not be discovered or discoverable over a long period until the emergence of symptoms which might cause the necessity of another operation leading to the discovery of the sponge. *See, e.g., Myrick v. James,* 444 A.2d 987, 996 n. 9 (Me.1982), and cases cited therein. Obviously in such a situation the right of action would accrue as of the date of discovery of the sponge.

Another classic illustration in the field of products liability would be a situation in which the cause of injury was exposure to a toxic substance, unknown to the victim to be harmful and whose harmful effects would not become apparent or even discoverable for many years after the initial exposure. *See Anthony v. Abbott Laboratories,* 490 A.2d 43 (R.I.1985); *see also Mascarenas v. Union Carbide Corp.,* 196 Mich.App. 240, 244–46, 492 N.W.2d 512, 514 (1992); *Sahlie v. Johns–Manville Sales Corp.,* 99 Wash.2d 550, 553, 663 P.2d 473, 475 (1983). In this situation the right of action accrues upon the discovery of the harmful effects of the substance and its toxic quality.

Another example would be the situation in which a building might be constructed with an undiscoverable latent defect. Such a defect might only become apparent a considerable length of time after the construction had been completed. *See Lee v. Morin,* 469 A.2d 358 (R.I.1983). Subject to the statute of repose, § 9–1–29, this right of action would only accrue when the latent defect and its harmful effects were discovered.

■ However, in respect to automobile accidents, whether such accidents result in personal injuries or wrongful death, the right of action accrues as of the time of the accident. *See Von Villas v. Williams,* 117 R.I. 309, 313–14, 366 A.2d 545, 548 (1976) ("general rule is that, for purposes of the statute of limitations, a cause of action for personal injury in an automobile accident accrues at the time of the accident or injury"). This doctrine is based upon the fact that the traumatic event is immediately apparent to the participants or their legal representatives. It does not mean that the entire theory of the case immediately becomes apparent to the potential plaintiff. Without question, he or she must carry out both factual and legal investigations of varying durations. Such an investigation may take months or years and may continue after the filing of the action through a period of discovery ending shortly before or even just prior to the commencement of trial. This does not mean that the statute of limitations will be tolled until the investigation is complete. Such a doctrine would render the statute of limitations meaningless and ineffective. Such could not

be the legislative intent in application of a rule of discovery.

### B

We first recognized a discovery-rule exception to a strict reading of a statute of limitations in *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968). In *Wilkinson* we stated that, under the discovery rule, in medical-malpractice suits "the statute of limitations does not commence until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered, that he has sustained an injury as a result of the physician's negligent treatment." *Id.* at 234, 243 A.2d at 751. In adopting the discovery rule, we stated that in a medical malpractice case

> "[i]t would, in our opinion, be manifestly unjust to bar the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years [the then limitation period for medical malpractice actions] of the negligent act." *Id.* at 237, 243 A.2d at 752.

We ultimately held that the plaintiff was entitled to a hearing in the Superior Court to determine when the statute of limitations began to run. The discovery rule for medical-malpractice cases has since been codified by the Legislature in chapter 1 of title 9. Section 9–1–14.1(b), as amended by P.L.1988, ch. 392, § 1.

Since *Wilkinson* we have broadened the application of the discovery rule to include cases involving actions under strict products liability for damages to personal property, *Romano v. Westinghouse Electric Co.,* 114 R.I. 451, 336 A.2d 555 (1975), in actions for damage to real property, *Lee v. Morin,* 469 A.2d 358 (R.I.1983), and in actions against drug manufacturers under strict products liability, *Anthony v. Abbott Laboratories,* 490 A.2d 43 (R.I.1985).

The court in *Anthony* examined the policy considerations behind the application of a statute of limitations in a complex drug-products liability case involving plaintiffs who were exposed to diethylstilbetrol (DES) in utero. The court weighed "the policy of eliminating the unexpected enforcement of stale claims with the opportunity of a person to have her day in court to vindicate those rights that have been violated but have remained undiscovered or undiscoverable." 490 A.2d at 46–47. In such a case the court held that the statute does not begin to run until the plaintiff "discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." 490 A.2d at 46.

Today, in interpreting the discovery rule of § 10–7–2, we must be mindful not to interpret *Anthony* to extend far beyond the facts on which it was based. The majority opinion was cognizant that the rule it enunciated was for application "in a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time." *Id.* Moreover, in a dissenting opinion it was stated that an extension of the *Anthony* test to "less complex but debatable personal injury liability cases * * * would certainly dilute the effectiveness of the statute of limitations." 490 A.2d at 50 (Weisberger, J., dissenting). It is that less complex personal-injury case that we face today.

### IV

The facts in the case at bar are like the automobile-accident illustration above and can be distinguished from *Anthony* in almost every relevant aspect. Whereas in *Anthony* the manifestation of the injury, the cause of the injury, and the knowledge of wrongdoing occurred at different times that could well have stretched over years or decades, in Benner's accident, its purported cause and knowledge of possible wrongdoing by RIDOT occurred either simultaneously or nearly immediately after Benner's death—well within the limitations period.

■ The plaintiff claims that various facts, such as a one-year delay in the medical examiner's placing an official cause of death on Benner's death certificate and the misplacement of a witness list attached to the State Police accident report of the incident, prevented her from discovering and/or properly

investigating the cause of or parties responsible for Benner's death. However, there has been no allegation against RIDOT, the party asserting the statute-of-limitations defense, of any fraud or misrepresentation in order to conceal the cause of action. *See* § 9–1–20 (tolling statute of limitations when there has been a showing of concealment of a cause of action through fraud or misrepresentation until such time as the party entitled to sue discovers the concealment). Absent this showing, we cannot say that any of the alleged facts, accepted as true, toll the running of the statute.

■ Ultimately we are constrained to conclude that plaintiff was aware of Benner's death and his collision at a highway construction site under the control of RIDOT on the day of the accident, July 6, 1989. The three-year statute of limitations contained in § 9–1–25 for actions against the state began to run on that day and expired on July 6, 1992. Because plaintiff did not retain the services of a highway safety expert until June 5, 1992 (approximately one month before the expiration of the statute of limitations) and because this expert did not render his opinion to plaintiff until eighteen days after the expiration of the statute does nothing to toll the running of the statute. *See Ashey v. Kupchan,* 618 A.2d at 1269 ("[w]e agree with the trial justice that the date that plaintiffs tracked down an expert to confirm their suspicions of negligence is not the operative discovery date"). A potential plaintiff is under an affirmative duty to investigate diligently a claim and is not allowed to use the discovery rule to postpone indefinitely the running of the statute of limitations. *See Pari v. Corwin,* 620 A.2d 86, 87 (R.I.1993); *Dionne v. Baute,* 589 A.2d at 835.

If we were to hold otherwise, a statute would only begin to run when a potential plaintiff's investigation was complete. The plaintiff's certitude of negligence by RIDOT cannot be the deciding factor to determine when the statute of limitations begins to run. This would completely destroy the effectiveness of a limitations period. As the United States Supreme Court has stated: "It goes without saying that statutes of limitations often make it impossible to enforce what

were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 361, 62 L.Ed.2d 259, 271 (1979).

We therefore hold that the statute of limitations applicable to the plaintiffs' action began to run on July 6, 1989, and expired on July 6, 1992. Because a complaint was not brought until July 24, 1992, the plaintiffs' action against RIDOT is barred. The petition for certiorari is granted and the order of the trial justice is hereby quashed. We remand the papers in this case to the Superior Court with direction to enter summary judgment in favor of RIDOT.