March 14, 2019

**Supreme Court**

No. 2017-235-Appeal.
(PC 14-91)

Dawn M. Parrillo, Administratrix of the      :
    Estate of Daniel Santos

              v.                    :

Rhode Island Hospital et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Dawn M. Parrillo, Administratrix of the    :
      Estate of Daniel Santos

             v.             :

Rhode Island Hospital et al.         :

Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  The plaintiff in this wrongful death action, Dawn M. Parrillo, Administratrix of the Estate of Daniel Santos (Parrillo or plaintiff), appeals from the entry of summary judgment in favor of the defendant, Shea Gregg, M.D.  A justice of the Superior Court dismissed the action against Dr. Gregg because the statutory period for filing a wrongful death action had expired.  After thoroughly reviewing the record and after carefully considering the arguments of the parties, we affirm the entry of summary judgment.

## I

### Facts and Travel

In the early hours of Friday, February 17, 2012, Daniel Santos was returning home from an event celebrating his boss's birthday when he lost control of his vehicle and collided with a utility pole.  Mr. Santos was transported to Rhode Island Hospital, where he was admitted to the Trauma Intensive Care Unit with multiple injuries, including six fractured ribs and other injuries to his right knee and right foot.  Over the next three days, Santos's condition stabilized, and he even showed some signs of improvement.  That improvement caused the medical staff to move

Mr. Santos to the medical floor for further monitoring and treatment. There, he expressed his eagerness to go home.

Optimism proved to be fleeting, however, and Mr. Santos's condition soon took a drastic turn for the worse. On February 21, Mr. Santos developed chest pain, and x-rays revealed that excess fluid had accumulated around his left lung. Mr. Santos was quickly transferred back to the Trauma Intensive Care Unit, where a chest tube was inserted and antibiotics were administered. That evening Mr. Santos suffered two cardiac arrests, but he regained vital signs after two minutes of cardiopulmonary resuscitation (CPR). He was then sedated in an effort to improve oxygenation and ventilation. Unfortunately, however, Mr. Santos's condition continued to deteriorate. On the morning of February 22, his family made the difficult decision to withdraw treatment. Mr. Santos was pronounced dead later that morning.

On May 17, 2012, Dawn Parrillo, Mr. Santos's domestic partner and the administratrix of his estate, requested his medical records from Rhode Island Hospital because she believed that the records might reveal evidence of negligent treatment.[1] The hospital delivered those records three months later, on August 23, 2012.

On January 9, 2014, nearly two years after Mr. Santos died and nearly a year and a half after she received his medical records, Parrillo filed a complaint against the hospital, as well as Charles Adams, M.D. and Whitney Young, M.D., two physicians who had been involved in Mr. Santos's care, alleging negligent treatment leading to the wrongful death of Mr. Santos.[2] Parrillo filed a first amended complaint on February 20, 2014, which was nearly identical to the original

---

[1] Parrillo contends that she and Mr. Santos held themselves out as husband and wife, although they were never formally married. Because this action was brought in the name of Santos's estate, and because Ms. Parrillo is the administratrix of the estate, her relationship with Mr. Santos is irrelevant to this appeal.

[2] Although Parrillo's original complaint is dated December 12, 2013, it was docketed on January 9, 2014.

complaint, except that it omitted the allegations against Dr. Young.

In February 2015, three years after Mr. Santos's death, Parrillo first propounded requests for production of documents and interrogatories upon both Rhode Island Hospital and Dr. Adams. Relevant to this appeal, the interrogatories to Rhode Island Hospital requested that the hospital provide the name, address, and a description of "each and every person known to you to have treated the Plaintiff [*sic*] while inpatient at the Rhode Island Hospital from the time of his admission through to the time of his death on February 22, 2012." The hospital responded with a boilerplate objection that the interrogatory sought privileged information and that it was "ambiguous, overly broad and unduly burdensome." Nevertheless, the hospital stated further that "[w]ithout waiving this objection, Plaintiff is referred to the medical records[.]"

In November 2015, Parrillo propounded additional interrogatories upon Rhode Island Hospital, asking the hospital to "identify by name(s), address(es) and date(s) of care and treatment of all physicians, including the attending physicians responsible for the medical treatment and care rendered to Mr. Santos from the date of his admission to the Rhode Island Hospital on February 17, 2012, through February 22, 2012." The hospital also objected to this interrogatory, again claiming that it was "overly broad, irrelevant and burdensome[,]" but again, without waiving that objection, referred Parrillo to Mr. Santos's "Rhode Island Hospital chart." Parrillo did not file a motion to compel more responsive answers.

Nevertheless, Rhode Island Hospital agreed to provide the names of the attending physicians during Mr. Santos's hospital stay, and, on February 3, 2016, the hospital sent Parrillo's attorney an email identifying, for the first time, Dr. Gregg as the attending physician in

- 3 -

the Trauma Intensive Care Unit on February 20, 2012.[3] Armed with this information, on April 1, 2016, Parrillo moved for leave to amend her complaint a second time. That motion was granted on May 9, 2016. The second amended complaint added several new defendants, including Dr. Gregg.

Dr. Gregg filed a motion for summary judgment on May 23, 2016, claiming that the statute of limitations for wrongful death had expired before he had been added as a defendant. The Superior Court agreed, the motion was granted, and judgment was entered soon thereafter in favor of Dr. Gregg. Parrillo timely appealed.

## II

### Standard of Review

This Court reviews a decision granting summary judgment *de novo*. *DeLong v. Rhode Island Sports Center, Inc.*, 182 A.3d 1129, 1134 (R.I. 2018). In doing so, we "[e]xamin[e] the case from the vantage point of the trial justice who passed on the motion for summary judgment" and "view the evidence in the light most favorable to the nonmoving party[.]" *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013) (quoting *Sacco v. Cranston School Department*, 53 A.3d 147, 150 (R.I. 2012)). "Summary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Sola v. Leighton*, 45 A.3d 502, 506 (R.I. 2012) (brackets omitted) (quoting *Plunkett v. State*, 869 A.2d 1185, 1187 (R.I. 2005)).

---

[3] The parties agree that Dr. Gregg is briefly mentioned in Mr. Santos's medical records as having intubated the patient, although, during his deposition, Dr. Gregg disputed that he had performed the procedure. Those records were provided to Parrillo on August 23, 2012.

- 4 -

**Discussion**

The issues raised in this appeal can be distilled to one question: Is the statute of limitations for wrongful death actions contained in G.L. 1956 § 10-7-2 tolled when a plaintiff does not timely discover the identity of an alleged tortfeasor? We answer that it is not.

In Rhode Island, actions seeking recovery for a wrongful death must be commenced within three years of the date of death, except in situations where the wrongful death is alleged to have been "caused by any wrongful act, neglect or default which is not known at the time of death[.]" Section 10-7-2. In those circumstances, the statute of limitations may be tolled and the action may be considered timely if "commenced within three years of the discovery of the wrongful act, neglect or default or within three years of when, in the exercise of reasonable diligence, the wrongful conduct should have been discovered." *Pari v. Corwin*, 620 A.2d 86, 87 (R.I. 1993); s*ee* § 10-7-2. Significantly, "the Wrongful Death Act's focus [is] on the *act* that caused the death rather than the *actors*[.]" *O'Connell v. Walmsley*, 156 A.3d 422, 428 (R.I. 2017) (emphases added) (internal parentheses omitted).

It is significant that Parrillo did not name Dr. Gregg as a defendant in this wrongful death action until she filed her second amended complaint in April 2016, more than four years after Mr. Santos's death.[4] She argues, however, that the statute of limitations set forth in § 10-7-2 should be tolled because she could not, in the exercise of reasonable diligence, have discovered the "wrongful act, neglect or default" of Dr. Gregg until February 2016, when he was finally

---

[4] The hearing justice determined that Parrillo's second amended complaint did not relate back to her original filing because there was no evidence that Dr. Gregg was aware that there was a possible claim against him or that he knew that, but for a mistake, he would have been named as a party to the suit. *See* Super. R. Civ. P. 15(c). Parrillo does not appeal this aspect of the hearing justice's decision.

identified by counsel for Rhode Island Hospital as an attending physician during what is claimed to be a critical portion of Mr. Santos's fateful stay at Rhode Island Hospital. We do not agree.

## A

## The Wrongful Act, Not the Wrongful Actor

Because it appears to us that Parrillo incorrectly interprets the arc of § 10-7-2, we begin our analysis with an examination of the text of the statute as well as our previous interpretations of it. As we have set forth *supra*, the fulcrum of the discovery rule in § 10-7-2 is "the *act* that caused the death rather than the *actors*[.]" *O'Connell*, 156 A.3d at 428 (emphases added) (internal parentheses omitted). We therefore have no hesitation in concluding that Parrillo's focus on the identification of Dr. Gregg as a potential tortfeasor is misdirected. This is so because Parrillo's knowledge of the *wrongful conduct* began the running of the statute of limitations, not her belief that Dr. Gregg may have been the actor responsible for that conduct.

Section 10-7-2 reads, in pertinent part:

> "Except as otherwise provided, every action brought pursuant to this chapter shall be commenced within three (3) years after the death of the person. With respect to any death caused by any wrongful act, neglect or default which is not known at the time of death, the action shall be commenced within three (3) years of the time that the wrongful act, neglect or default is discovered or, in the exercise of reasonable diligence, should have been discovered."

Importantly, it is clear from a reading of the text of the statute that it is a potential plaintiff's knowledge of the "wrongful act, neglect or default" that triggers the statute of limitations. Notably absent from the text of the statute is any mention of a potential plaintiff's knowledge of the *identity* of the alleged tortfeasor.

Moreover, the date the plaintiff discovered the allegedly wrongful conduct has always been our lodestar when determining whether or not the statutory period for filing a wrongful

death suit has expired. For example, in *Ashey v. Kupchan*, 618 A.2d 1268 (R.I. 1993), the plaintiffs argued that, although they suspected at the time of their son's death that his demise had been caused by medical malpractice, it was not until they obtained an expert opinion on the matter, almost a year after the death, that their suspicions were confirmed. *Ashey*, 618 A.2d at 1269. The plaintiffs thus argued that § 10-7-2 should be tolled until the date the plaintiffs received that expert opinion. *Id.* We disagreed, reasoning that the operative date was not when the plaintiffs "tracked down an expert to confirm their suspicions[.]" *Id.* Instead, we held that "Section 10-7-2 states that the discovery date is the date that the plaintiffs knew or should have known of the 'wrongful act' that is the basis of their lawsuit." *Id.* Because the plaintiffs were aware of the wrongful conduct shortly after their son's death but waited more than three years to file suit, § 10-7-2 time barred their claim. *Id.* at 1270.

Similarly, in *Pari*, the plaintiffs were "almost immediately aware" that delays in referring their minor child to surgery had contributed to the child's death, but they nevertheless waited more than four years to file a wrongful death claim. *Pari*, 620 A.2d at 86-87. We held that the tolling provision in § 10-7-2 was unavailable in these circumstances, and that the plaintiffs had "simply failed to file their wrongful-death action within the proper time." *Id.* at 87.

In *Benner v. J.H. Lynch & Sons, Inc.*, 641 A.2d 332 (R.I. 1994), the plaintiff's husband was killed when his vehicle struck a guardrail and a parked truck near a highway construction site. *Benner*, 641 A.2d at 333. More than three years later, the plaintiff brought a wrongful death claim against the Rhode Island Department of Transportation and two private contractors that had been working on the construction site for negligently designing and maintaining the site's safety features. *Id.* at 333-34. To determine whether the plaintiff's claim was time barred by § 10-7-2, we were tasked with determining the date on which the plaintiff should have

discovered the wrongful conduct that caused her husband's death—the date of her husband's accident or the date an expert opined on the sufficiency of the highway safety features. *Id.* at 334. We held that, with respect to automobile accidents, the cause of action accrues at the time of the accident because that is the date upon which a plaintiff is put on notice that the decedent's injuries could have been caused by tortious conduct. *Id.* at 336. We explained that:

> "This doctrine is based upon the fact that the traumatic event is immediately apparent to the participants or their legal representatives. * * * Without question, [a potential plaintiff] must carry out both factual and legal investigations of varying durations. * * * This does not mean that the statute of limitations will be tolled until the investigation is complete. Such a doctrine would render the statute of limitations meaningless and ineffective." *Id.*

In all these cases, the critical factor in our analysis has been the date when the plaintiff became aware that the decedent's death could have been caused by wrongful conduct, and thus when "the wrongful act, neglect or default [was] discovered or, in the exercise of reasonable diligence, should have been discovered."[5] Section 10-7-2.

Parrillo argues that our decision in *O'Sullivan v. Rhode Island Hospital*, 874 A.2d 179

---

[5] We have also adhered to this principle when considering the discovery rule in other contexts. For example, in product liability suits, we have held that "the discovery rule concerns the discovery that one has suffered an injury, not the discovery of the identity of the party allegedly responsible for causing the injury." *Renaud v. Sigma-Aldrich Corporation*, 662 A.2d 711, 715 (R.I. 1995) (examining personal injury claim governed by statute of limitations in G.L. 1956 § 9-1-14). Similarly, we have held that the tolling provision for a claim of medical malpractice in § 9-1-14.1 "assists a plaintiff who is unable in the exercise of reasonable diligence to discover an injury due to medical malpractice[,]" but is unavailable when a plaintiff knows of the injury and "merely claims that she did not know the identity of the medical doctor who might have treated [the injured person]." *Grossi v. Miriam Hospital*, 689 A.2d 403, 404 (R.I. 1997). However, we have treated cases founded on drug-products liability more liberally in the context of the tolling of an applicable statute of limitation. *See Anthony v. Abbott Laboratories*, 490 A.2d 43, 46 (R.I. 1985) ("[I]n a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer.").

(R.I. 2005), stands in contrast to this longstanding rule. We do not agree, and conclude that her reading of *O'Sullivan* is fundamentally flawed.

In *O'Sullivan*, the plaintiff's wife was brought by ambulance to Newport Hospital complaining of nausea, vomiting, decreased appetite, and persistent fever. *O'Sullivan*, 874 A.2d at 181. At the hospital, Mrs. O'Sullivan was rehydrated with a saline solution and promptly discharged. *Id.* The next day, she was again transported by ambulance to Newport Hospital with worsening symptoms, and was again rehydrated and again discharged. *Id.* Two days after that, she was brought to Newport Hospital for a third time; she was finally admitted as a patient and diagnosed with severe bilateral pneumonia and severe neutropenia, a condition that caused her to be more susceptible to bacterial infections. *Id.* She was soon transferred to Rhode Island Hospital, where she died after spending three weeks in that hospital's intensive care unit. *Id.*

The plaintiff received his wife's medical records roughly three months after her death on March 1, 1999. *O'Sullivan*, 874 A.2d at 181. Later that year, the plaintiff filed a wrongful death action against a number of defendants affiliated with Newport Hospital. *Id.* The plaintiff waited until June 2002, however, to file a wrongful death claim against defendants associated with Rhode Island Hospital. *Id.* Importantly, the claims against the Rhode Island Hospital defendants were filed more than three years after the decedent's death, but less than three years after the plaintiff received his wife's medical records. *Id.* At issue, therefore, was whether the statute of limitations in § 10-7-2 began to run on the date of Mrs. O'Sullivan's death or on the date on which the plaintiff received her medical records. *Id.* at 183.

We began our analysis in *O'Sullivan* by "unhesitatingly" rejecting the argument that the "fact of death *always* triggers the running of the wrongful death statute of limitations" when death is allegedly caused by medical errors. *O'Sullivan*, 874 A.2d at 184 (emphasis in original).

Unlike automobile accidents, in which "the traumatic event is immediately apparent to the participants or their legal representatives[,]" *Benner*, 641 A.2d at 336, the plaintiff in *O'Sullivan* "had no knowledge or reason to know of possible *tortious acts*" at Rhode Island Hospital, considering that the decedent had been transferred to Rhode Island Hospital only after "*multiple fruitless trips to Newport Hospital*" with increasingly worsening symptoms. *Id.* at 184, 185 (first emphasis added; second emphasis in original).

We believed that those "fruitless trips" were such dominant "red flags" that it was "not at all illogical" for the plaintiff to focus at the outset on the conduct of the Newport Hospital actors when first filing his wrongful death claim. *O'Sullivan*, 874 A.2d at 187. Indeed, we held that "[t]here was no reason for plaintiff initially to believe that he should inquire beyond the local hospital to which Mrs. O'Sullivan had thrice been transported." *Id.* It was not until the plaintiff received the decedent's medical records that he had any reason to suspect that other tortious conduct, at Rhode Island Hospital, might have contributed to his wife's death. *Id.*

We concluded, therefore, that "any alleged *wrongful act* on the part of the Rhode Island Hospital defendants was not known to plaintiff at the time of Mrs. O'Sullivan's death" and that the plaintiff's receipt of his late wife's medical records triggered the statute of limitations as to Rhode Island Hospital because it was those medical records that first suggested that tortious conduct might have occurred there.[6] *O'Sullivan*, 874 A.2d at 187-88 (emphasis added). We held that "when virtually all available evidence indicates that the tort (if any) in all likelihood was caused by one particular entity or person, the plaintiff is not obliged to beat the bushes at the

---

[6] We did note, however, that the facts before us in *O'Sullivan v. Rhode Island Hospital*, 874 A.2d 179 (R.I. 2005), were "highly unusual" and that "[i]n the usual situation, the plaintiff would be aware of the wrong (or the reasonably suspected wrong) at or immediately following the death and would know at that time which defendants should be named." *O'Sullivan*, 874 A.2d at 180, 187. Those unusual circumstances are not before us in this case.

first conceivable opportunity in an attempt to locate yet more possible tortfeasors." *Id.*

Contrary to Parrillo's contention in this case, our holding in *O'Sullivan* did not adopt a rule whereby the statute of limitations in § 10-7-2 would be tolled until a plaintiff learns of the identity of the allegedly negligent party.[7] *O'Sullivan* was instead a rather straightforward application of our longstanding interpretation of § 10-7-2—namely, that "the statute of limitations is automatically tolled when the 'wrongful act, neglect or default' 'is not known at the time of death' and it is the actual (or imputed) discovery of the 'wrongful act, neglect or default' that triggers the running of the statute." *O'Sullivan*, 874 A.2d at 186 (emphasis omitted).

**B**

**Application**

Having completed our review of the caselaw and having confirmed that "it is the actual (or imputed) discovery of the 'wrongful act, neglect or default' that triggers the running of the statute" of limitations in § 10-7-2, *O'Sullivan*, 874 A.2d at 186 (emphasis omitted), we now turn our attention to the facts before us to determine when Parrillo "knew or should have known of the 'wrongful act' that is the basis of [her] lawsuit." *Ashey*, 618 A.2d at 1269.

The alleged wrongful acts that form the basis of Parrillo's claim against Dr. Gregg can be found in her second amended complaint and are as follows: Dr. Gregg (1) "failed to recognize signs of infection"; (2) "failed to begin a regimen of antibiotics"; (3) "fail[ed] to order a chest CT"; (4) did "not us[e] CT Angio or D-Dimer to rule out pulmonary embolism, or acute

---

[7] Parrillo's confusion may be attributable to our discussion in *O'Sullivan* of the West Virginia case *Gaither v. City Hospital, Inc.*, 487 S.E.2d 901 (W. Va. 1997). In that case, the highest court of West Virginia ruled that that state's statute of limitations on medical malpractice actions would not begin to run until a plaintiff knew of the injury sustained, the identity of the allegedly negligent party, and the causal relationship between the two. *See Gaither*, 487 S.E.2d at 909. However, while we noted that our decision in *O'Sullivan* was "guided" by *Gaither*, we did not adopt that case's rule as our own, nor do we do so now. *See O'Sullivan*, 874 A.2d at 188-89.

infection"; (5) "failed to recognize and act upon clinical signs of infection"; (6) "failed to provide a reasonable degree of care"; and (7) "fail[ed] to properly and timely diagnose Santos's deteriorating health, infection and general condition[.]" In our opinion, this conduct was discoverable, at the latest, on August 23, 2012—the date on which Parrillo obtained Mr. Santos's medical records.[8] *See Meyette v. Leach*, 651 A.2d 1229, 1229 (R.I. 1994) (mem.) ("[W]e are of the opinion that the alleged negligence was neither latent nor undiscoverable if plaintiff had exercised reasonable diligence at the time of his wife's death. All of the records, including the x-rays, were available to plaintiff and his counsel."). Indeed, the conduct that Parrillo attributes to Dr. Gregg in the second amended complaint is in fact the very same conduct, pled almost word for word, that was alleged against the other defendants in Parrillo's original complaint.

It cannot be gainsaid, therefore, that Parrillo knew what conduct she believed caused Mr. Santos's death within the three-year statutory period set by § 10-7-2. When she was deposed, Parrillo acknowledged that she had suspected shortly after Mr. Santos's death that his death had been caused by malpractice, and it was that suspicion that drove her to request his medical records from Rhode Island Hospital. She simply failed to name all of the potentially responsible parties, including Dr. Gregg, before the three-year statutory period for filing a wrongful death claim had expired. It is our conclusion, therefore, that Parrillo's wrongful death claim against

---

[8] We note that the hearing justice believed the statute of limitations was tolled until Parrillo received Mr. Santos's medical records on August 23, 2012. However, as we observed in *O'Sullivan* and reiterate above in footnote six, "[i]n the usual situation, the plaintiff would be aware of the wrong (or the reasonably suspected wrong) at or immediately following the death and would know at that time which defendants should be named." *O'Sullivan*, 874 A.2d at 187. Nonetheless, because Parrillo did not name Dr. Gregg as a defendant until more than three years after both Mr. Santos's death and Parrillo's receipt of the medical records, we need not, and do not, express an opinion as to whether the statute of limitations began running on the date of Mr. Santos's death or on the date that Parrillo received Mr. Santos's medical records.

Dr. Gregg is time barred.[9]

In the face of a looming statute of limitations, plaintiffs are not devoid of options when they do not know the identity of all parties responsible for tortious conduct that they believe caused an injury. Mechanisms are available outside of § 10-7-2 that may preserve a claim while a plaintiff's investigation is ongoing. For example, G.L. 1956 § 9-5-20 allows plaintiffs to "toll an applicable statute of limitations against a known but then unidentifiable defendant * * * by designating that unidentified defendant by means of a fictitious name, such as John Doe." *Grossi v. Miriam Hospital*, 689 A.2d 403, 404 (R.I. 1997); *see* § 9-5-20. It is true that, as Parrillo argues, she was in no way *required* to employ John Doe defendants or to make use of the rules of civil procedure to compel more responsive answers to the discovery requests that she maintains were answered in an opaque, confusing, and incomplete manner. Unfortunately, however, because Parrillo did not avail herself of these mechanisms, she was unprepared when the statutory period for filing a wrongful death claim against Dr. Gregg expired. Rhode Island's statute of limitations on wrongful death claims cannot be circumvented to accommodate Parrillo's failure to make use of the tools available to her.

Our holding today underscores the importance of promptly and assiduously investigating

---

[9] Parrillo also briefly, and without citing any caselaw, contends that Rhode Island Hospital's answers to interrogatories were so unclear that they amounted to intentional obfuscation of Dr. Gregg's role in Mr. Santos's medical care. Parrillo cites to G.L. 1956 § 9-1-20, which, she contends, tolls the statute of limitations if the defendant acted in any way to conceal the existence of a cause of action. *See* § 9-1-20. Assuming, without deciding, that this bare bones argument was sufficiently developed in Parrillo's brief, we nonetheless observe that § 9-1-20 applies only where "the party asserting the statute-of-limitations defense attempted by fraud or misrepresentation to conceal the existence of the cause of action." *Renaud*, 662 A.2d at 714 (internal punctuation omitted). It is not sufficient to allege that one defendant has acted to conceal a cause of action against another defendant. *See id.* Parrillo takes issue only with the discovery provided by Rhode Island Hospital, and does not allege any obfuscation on the part of Dr. Gregg, the party asserting the statute of limitations defense. Therefore, even though we agree with Parrillo that Rhode Island Hospital's interrogatory answers were not particularly transparent, we nonetheless conclude that § 9-1-20 is inapplicable to this case.

the facts of one's claim. Despite obtaining Mr. Santos's medical records within months of his death, Parrillo did not file a wrongful death suit until January 2014 and did not even begin the process of discovery until February 2015—almost three years to the day after Mr. Santos's death. While a plaintiff's reasonable diligence is not a prerequisite to tolling under § 10-7-2, as it is for other statutes of limitations, such as that for medical malpractice, *see O'Sullivan*, 874 A.2d at 185-86, plaintiffs must nevertheless "investigate diligently who may or may not have had any exposure to liability during treatment" lest the statute of limitations expire before they have filed claims against all of the responsible parties. *Dionne v. Baute*, 589 A.2d 833, 835 (R.I. 1991). As we said in *Benner*, "[w]ithout question, [a potential plaintiff] must carry out both factual and legal investigations of varying durations. * * * This does not mean that the statute of limitations will be tolled until the investigation is complete. Such a doctrine would render the statute of limitations meaningless and ineffective." *Benner*, 641 A.2d at 336.

It is possible that, had she diligently investigated her claim and timely named Dr. Gregg as a defendant, Parrillo could have maintained a viable wrongful death action against him. Nevertheless, as the United States Supreme Court has said: "It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *United States v. Kubrick*, 444 U.S. 111, 125 (1979); *see Benner*, 641 A.2d at 338; *see also Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 180-81 (R.I. 2008).

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the entry of summary judgment. The

papers shall be remanded to the Superior Court.

Justice Goldberg did not participate.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Dawn M. Parrillo, Administratrix of the Estate of Daniel Santos v. Rhode Island Hospital et al. |
| **Case Number** | No. 2017-235-Appeal. (PC 14-91) |
| **Date Opinion Filed** | March 14, 2019 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff: Brian R. Cunha, Esq. |
| | For Defendant: Robert P. Landau, Esq. |